Roy E. McGUIRK, Petitioner, Appellant,

v.

Michael FAIR et al., Respondents,
Appellees.

No. 79–1653.

United States Court of Appeals,
First Circuit.

Argued April 10, 1980.

Decided June 19, 1980.

Stephen Hrones, Boston, Mass., for petitioner, appellant.

Barbara A. H. Smith, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bel-

* Of the District of New Hampshire, sitting by designation.

lotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau and Robert V. Greco, Asst. Atty. Gen., Criminal Bureau, Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, LOUGHLIN,* District Judge.

LOUGHLIN, District Judge.

The issue in this habeas corpus appeal is whether the defendant voluntarily pled guilty to an indictment charging second degree murder. The defendant was indicted by the Grand Jury for the County of Middlesex in the Commonwealth of Massachusetts for murder in the first degree. On July 14, 1975 defendant pled guilty to murder in the second degree and was sentenced to a life term at the Massachusetts Correctional Institution at Walpole. Approximately a year later on July 16, 1976 the defendant filed a motion for a new trial requesting that he be allowed to withdraw his plea of guilty. The basis for his motion is that he was not informed relative to the distinction between murder in the first and second degree or as to the elements of second degree murder.

On June 29, 1974, the defendant returned to his home about 6 o'clock in the morning. He had been drinking and had consumed some drugs. In his apartment he found a young woman whom the defendant had allowed to live there in the past. With the young woman was the victim, Nicholas Zoffreo. The remaining undisputed facts are set forth in the opinion of the Massachusetts Supreme Judicial Court, 380 N.E.2d 662, 664–665 (1978):

The defendant explained his anger at finding his apartment being used in his absence and stated that an argument had ensued. The defendant then said: "Nicky came towards me; I thought he was going to hit me or something. I just started hitting on him, and I didn't stop until I realized what—I just kept on hit-

ting him, I didn't realize I killed him. I just panicked from there." The defendant admitted striking the first blow and also stated that he was sorry for what had happened for he was "not a person that goes around killing people like that." The detective who had investigated the homicide testified at the plea hearing. He related statements from an eyewitness that the defendant had thrown a fit of temper and had beat, kicked, and strangled the victim with a rope or wire and suffocated him with pillows and blankets. The detective said that the defendant had made an admission to the person who had helped him dispose of the body in the Charles River that he had received rope burns as a result of the pressure used in garrotting the victim. After informing the defendant of the constitutional rights being waived by him and the maximum penalty for murder in the second degree and inquiring into the voluntariness of the plea, the judge accepted the guilty plea.

A petition for writ of certiorari was denied by the United States Supreme Court. A petition for writ of habeas corpus, filed in the Federal District Court for the District of Massachusetts, was denied.

Defendant at the time of his arraignment on October 23, 1974 was represented by appointed counsel, presently a member of the judiciary, who continued to represent him through his guilty plea.

Trial counsel and the prosecutor had discussions about a change of plea from first degree murder to a plea to murder in the second degree and a plea to manslaughter. These discussions took place from May 12, 1975 up to the date of the plea. Counsel advised the defendant against a plea to second degree murder. Defendant decided to plead to second degree murder telling his counsel: "I want to get it over with. I don't want to go through it. I want to finish it right here and now. I killed him, and I've got to pay the price and I want to get it over with right now."

Conferences between defense counsel and the defendant went on over a period of two months about the evidence the Commonwealth had and possible pleas to murder in the second degree and manslaughter. Defense counsel didn't want the defendant to plead guilty to second degree murder. It was at this point as heretofore stated the defendant stated he wanted to get it over with.

At the conclusion of the evidentiary hearing, before the U.S. District Court, the court indicated to defense counsel that he had practically pleaded with him to put the defendant on the stand to testify as to his state of mind, but counsel declined to do so. See *Henderson v. Morgan*, 426 U.S. 637, 639, 96 S.Ct. 2253, 2255, 49 L.Ed.2d 108 (1976).

It is the contention of the defendant that his plea is invalid under *Henderson v. Morgan, supra*. The question presented in *Henderson v. Morgan, supra*, 638, 96 S.Ct. 2254 is whether a defendant may enter a voluntary plea of guilty to a charge of second degree murder without being informed that intent to cause the death of his victim was an element of the offense. The holding of *Henderson* was very narrow, however, and its facts are distinguishable from those of the instant case. The Court held that the defendant must receive "real notice" of the offense to which he pleaded, 426 U.S. at 645, 96 S.Ct. at 2257, the Court was not erecting a *per se* rule that failure to inform the defendant of the technical elements of an offense, which are often confusing even to lawyers, renders involuntary a plea of guilty to that offense. The Court wrote:

"Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked

to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent." 426 U.S. at 647, 96 S.Ct. at 2258.

In the case before us, the experienced trial counsel sufficiently explained second degree murder to petitioner to give him notice of the offense to which he pleaded. We agree with the finding of the district court:

> "[D]efense counsel's extended discussion with the petitioner about the difference between first and second degree murder, the chances for conviction of first degree murder, the possibility of a manslaughter plea and his analysis of the evidence and inferences which the jury could draw all combined to fairly appraise him of the crime to which he ultimately pleaded.

> "Petitioner may well have received a more effective explanation of second degree murder than a formal incantation of technical elements would have given him."

We find it implausible, considering the statement about the killing the accused made to the trial judge, the description of the events given by the detective to the judge in the accused's presence, and the conference between the accused and his counsel, that petitioner did not have real notice of the offense to which he pleaded guilty. For the court to find constitutional infirmity in petitioner's guilty plea would violate rather than follow *Henderson*.

*Affirmed.*