COMMONWEALTH *vs.* THOMAS J. SWIFT.

Suffolk.  September 10, 1980. — December 10, 1980.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Plea.  *Homicide.*

The record of a proceeding in which the defendant entered a plea of guilty
    to murder in the second degree warranted a finding that the defendant
    had understood the substance of the charge against him and that he
    had "real notice" that malice aforethought was an element of the of-
    fense because he admitted facts which constituted that element of the
    crime.  [81-84]
Where the record of a proceeding in which a defendant entered a plea of
    guilty to a criminal offense indicated that the plea was voluntary but
    the defendant subsequently moved for a new trial on the ground that
    the plea was made involuntarily for reasons not appearing in the rec-
    ord, the judge hearing the defendant's motion was not limited to
    deciding the issue solely on the basis of the record of the plea proceed-
    ing and, therefore, did not err in admitting the testimony of counsel
    who had represented the defendant at the prior proceeding.  [84-85]
A defendant's plea of guilty to murder in the second degree was not ren-
    dered involuntary by the fact that his counsel failed to explain to him
    the elements of voluntary manslaughter.  [85]

INDICTMENT found and returned in the Superior Court on
December 5, 1969.

A motion for a new trial was heard by *Barton, J.*

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Steven J. Rappaport* for the defendant.

*Jan Roller,* Legal Assistant to the District Attorney
(*Michael J. Traft,* Assistant District Attorney, with her) for
the Commonwealth.

ABRAMS, J. ·The defendant Thomas J. Swift stands con-
victed of murder in the second degree, by virtue of his plea

of guilty. Swift now seeks to withdraw his guilty plea on
the ground that it was involuntary because he was not in-
formed that malice aforethought is an element of the offense
to which he pleaded. See *Henderson* v. *Morgan*, 426 U.S.
637 (1976); *Commonwealth* v. *Huot*, 380 Mass. 403 (1980);
*Osborne* v. *Commonwealth*, 378 Mass. 104 (1979); *Com-
monwealth* v. *Soffen*, 377 Mass. 433 (1979); *Commonwealth*
v. *McGuirk*, 376 Mass. 338 (1978), cert. denied, 439 U.S.
1120 (1979). See also *McGuirk* v. *Fair*, 622 F.2d 597 (1980).

Swift was indicted for murder in the first degree in 1969.
On July 13, 1970, Swift's guilty plea to murder in the second
degree was accepted, and he was sentenced to a life term at
the Massachusetts Correctional Institution at Walpole. On
January 29, 1979, the defendant moved for a new trial,
which motion was denied after an evidentiary hearing on
the issue of voluntariness. The defendant appealed under
G. L. c. 278, §§ 33A-33G. We affirm the denial of the de-
fendant's motion for a new trial.

We summarize the facts.[1] At the hearing on Swift's plea,
a police officer who had investigated the homicide testified
that early on the morning of September 11, 1969, he was
called to 57 Warren Avenue, Boston, where he found the
body of a man later identified as Leslie Weiland lying face
down in the rear alley. Traces of blood led the officers to
the door of the cellar apartment at 57 Warren Avenue.
More blood was found inside the apartment, and two win-
dow weights with blood on them were seized.

The apartment was rented by the defendant and one Sus-
sann Sennett. Sennett was arrested that evening, and the
defendant later that same night. Upon arrest, Swift said,
"Thank God you got me." On the way to the police ve-
hicle, he stated, "I did not mean to do it," and, later, "I
didn't pick up the fag. He picked me up." While being
booked at the police station, the defendant saw Sennett and

---

[1] The record consists of the transcripts of the defendant's guilty plea,
and motion for new trial, and comprehensive findings by the judge on the
defendant's motion for a new trial. The motion judge was not the judge
who accepted the plea originally.

said, "What have you got her for? She didn't do anything. I killed the fag." A man's gold onyx ring was found in Swift's boot, and traces of blood were found on his clothing. A copy of the death certificate was produced certifying that death was caused by multiple blows to the head with massive hemorrhage.

Following the officer's testimony, the judge interrogated the defendant and established that he had the equivalent of a high school level education, had no problem speaking or understanding English, and had no history of mental illness. The defendant answered affirmatively when the judge asked if he knew he was charged with first degree murder and was pleading guilty to murder in the second degree.

The judge further interrogated the defendant[2] and informed him of the compulsory life sentence that would be

---

[2] The following questions and answers appear in the transcript:

THE JUDGE: "Have you heard the testimony of the officers?"

THE DEFENDANT: "Yes, I have, sir."

THE JUDGE: "And that in essence you are accused with killing one Leslie Weiland, by beating him over the head with window weights, dragging his body out of your apartment at 57 Warren Avenue, Boston, on September 11, 1969."

THE DEFENDANT: "Yes, I am, sir."

THE JUDGE: "And leaving the body in the alley."

THE DEFENDANT: "Yes, sir."

THE JUDGE: "Did you in fact commit the acts as I have stated them?"

THE DEFENDANT: "Yes, I have, sir."

THE JUDGE: "Do you wish to plead guilty to the offense of murder in the second degree?"

THE DEFENDANT: "Yes, I do, sir."

Later, the judge asked the defendant Swift about his discussions with his attorney:

THE JUDGE: "Have you discussed this matter fully with your attorney —."

THE DEFENDANT: "I have, sir."

THE JUDGE: "And are you confused in any way by the questions I have asked you?"

THE DEFENDANT: "No, I am not, sir."

THE JUDGE: "Are you fully satisfied that [your attorney] has fairly represented you?"

THE DEFENDANT: "Yes, I am, sir."

THE JUDGE: "And that he has acted in your best interests?"

THE DEFENDANT: "Yes, sir."

THE JUDGE: "I accept the plea."

imposed if the plea were accepted, and asked if the defend-
ant was aware that he was waiving his right to a jury trial
by pleading guilty. Upon receiving an affirmative answer,
the judge asked, "Do you understand that by pleading
guilty you admit the facts as they have been stated to you?"
The defendant answered, "Yes, I do, sir," and gave the
same answer when asked, "Do you plead guilty willingly,
freely and voluntarily?" The judge again informed Swift of
the compulsory life sentence and the fact that Swift would
not be eligible for parole for fifteen years. The judge then es-
tablished that no one was forcing Swift to enter the plea and
that he had not been induced by threats or promises. The
judge accepted the plea, and the defendant was sentenced.

A hearing on the motion to withdraw the guilty plea was
held before a judge of the Superior Court on November 1,
1979. The defendant at this time was represented by differ-
ent counsel, who presented as evidence only the transcript
of the plea proceeding. The challenge to the voluntariness
of the plea was based solely on the record. The Common-
wealth then called prior defense counsel as a witness and he
was permitted to testify that he explained all the elements of
second degree murder to the defendant. He said that the
defendant understood the discussions and asked intelligent
questions, and that they discussed evidence against Swift
that made the guilty plea a reasonable course of action.
When asked whether he specifically told the defendant that
malice was one of the elements of murder in the second
degree, defense counsel replied, "Yes. I used the term
'malice,' and I equated it with the facts when I said, 'You
intended to do him harm.'" Defense counsel then said that
he believed the defendant understood this point.

The judge questioned the witness as to whether he had
discussed the issue of manslaughter with the defendant. The
answer was "yes"; that he had discussed why he believed
that murder in the first degree could be proved; why
murder in the second degree could be proved with no dif-
ficulty; and why, in his opinion, the evidence made man-
slaughter "out of the question." When asked if he explained

exactly what manslaughter was, the attorney answered, "not any more than outlining the area of negligence or accidents or unintentional homicide."

Swift also took the stand and testified that he did not remember the actual crime; that he had been told he must admit to the facts as they were related to him at the plea hearing in order to have his plea accepted; and that, at the time of the plea, he thought second degree murder was similar to manslaughter and did not know that the distinguishing element between the two offenses was malice.

The judge ruled that the Commonwealth had met its burden of proof and had shown beyond a reasonable doubt that the defendant's plea was made "voluntarily, intelligently and with knowledge of its consequences and with an understanding of the nature of the charge." His ruling was based on two grounds. First, he found that the transcript of the defendant's plea proceeding, considered alone, indicated that the defendant was informed of the element of malice aforethought, and also showed that the defendant had admitted to facts constituting the element of malice aforethought. Second, the testimony of the defendant's former attorney was sufficient representation that counsel had explained to the defendant the elements admitted by the plea. See *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978).

The motion judge found, as a fact, that "[t]he transcript of the plea hearing indicates that the defendant understood the meaning of the indictment and the substance of the charge against him." On appeal, the defendant challenges this finding under *Henderson* v. *Morgan*, 426 U.S. 637 (1976), alleging that he did not receive adequate notice of the offense to which he pleaded guilty.[3] Specifically, he

---

[3] The Commonwealth argues that the *Henderson* policies should not apply in this case because the challenged guilty plea was entered six years before the *Henderson* decision. The trial judge declined to reach this issue because he found that there was ample evidence that the defendant's guilty plea was voluntary. Since we also conclude that the record reflects the fact that Swift's plea was voluntary, we do not reach the issue of the retroactivity of *Henderson*.

claims that "the contemporaneous and supplemental records fail to affirmatively demonstrate that he received notice that 'malice aforethought' was a necessary element of second degree murder," or that malice distinguished second degree murder from manslaughter.

We agree with the judge that the record of the plea proceedings supports a finding that the defendant understood the substance of the charge against him and that he had "real notice" of the offense as required by *Henderson* and *Commonwealth* v. *McGuirk, supra; McGuirk* v. *Fair,* 622 F.2d 597, 598 (1980), because he admitted to facts constituting the unexplained elements of the crime charged.

Malice aforethought, the element on which Swift focuses his attack, encompasses any intent to inflict injury without legal excuse or palliation; actual intent to kill is not necessary. *Commonwealth* v. *Hicks,* 356 Mass. 442, 444-445 (1969), citing *Commonwealth* v. *Bedrosian,* 247 Mass. 573, 576 (1929). In Massachusetts, intent to inflict injury is sufficient to permit a factfinder to infer malice aforethought because "it is possible to commit murder without any actual intent to kill or to do grievous bodily harm" for "malice in murder means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act." *Commonwealth* v. *Chance,* 174 Mass. 245, 252 (1899). See *Commonwealth* v. *Casale,* 381 Mass. 167, 171-172 (1980); *Commonwealth* v. *Scanlon,* 373 Mass. 11, 18 (1977). Cf. *Henderson,* where, under New York law at the time Henderson was convicted, *intent to kill* was a necessary statutory element of murder in the second degree. The judge concluded that the defendant's admissions that he caused the victim's death by inflicting "multiple blows to the head" and by "beating him over the head with window weights" were sufficient to show that Swift had the necessary intent to inflict injury. See *Commonwealth* v. *Huot,* 380 Mass. 403, 408, 410 (1980); *Osborne* v. *Commonwealth,* 378 Mass. 104, 108 (1979); *Commonwealth* v. *Soffen,* 377 Mass. 433, 442 (1979); *Commonwealth* v. *McGuirk, supra* at 344.

Moreover, Swift listened to the facts of the crime as described by the investigating officer and as summarized by the judge and answered affirmatively when asked if he admitted the facts as they had been stated to him. "An affirmative response to the facts as stated by another, if those facts include the necessary elements of the crime to which the defendant ultimately pleads guilty, is sufficient to satisfy the *Henderson* rationale." *Soffen, supra* at 442. The record adequately supports the judge's conclusion that Swift's plea was voluntary.

At the motion hearing the defendant objected to the introduction of new evidence by the Commonwealth. He relied on *Commonwealth* v. *Foster*, 368 Mass. 100 (1975), which he interpreted as compelling the judge to decide the voluntariness issue solely on the basis of the record of the plea proceeding.[4] The motion judge acted properly in admitting the testimony of Swift's prior counsel. The judge interpreted *Foster, supra,* as allowing the State to introduce evidence when the record made at the time of acceptance of the plea indicates that the plea was voluntary, but the defendant later asserts that it was made involuntarily for reasons outside the record. The motion judge read *Foster* as holding that where the contemporaneous record shows no effort by the judge to ensure the voluntariness of a plea, that inadequacy in the record cannot be cured by retroactive reconstruction of the record. We agree. In *Foster* we clearly stated that where "the contemporaneous record is sufficient on its face, but the defendant claims that his plea was nevertheless involuntary or unknowing for reasons not appearing of record, not only may the defendant introduce relevant evidence, but the Commonwealth may respond with evidence to the contrary from outside the original record." *Id.* at 108 n.7.

After hearing from Swift and his prior counsel, the judge found credible counsel's testimony that "he discussed with

---

[4] On appeal, the defendant has waived all objections to the evidence introduced at the motion hearing.

the defendant the elements of the various degrees of murder, including the lesser contained crime of manslaughter; that he used the term 'malice' when he discussed the elements in order to distinguish the different degrees of homicide; and that he discussed a possible mitigation of the charge of first degree murder, based on intoxication or insanity." The judge also credited counsel's testimony that the defendant understood the explanation. These findings make this case quite different from *Henderson*, which the Supreme Court characterized as "unique because the trial judge found as a fact that the element of intent was not explained to respondent." *Henderson, supra* at 647.

The defendant asserts that counsel's failure to discuss the elements of voluntary manslaughter with him renders his plea of guilty to second degree murder involuntary. The judge found that the defendant was informed of all elements of second degree murder, the offense to which he was pleading.[5] Since Swift was informed as to all the essential elements of murder in the second degree, his plea was voluntary.

The order denying Swift's motion to withdraw his guilty plea, and for a new trial, is affirmed.

*So ordered.*

---

[5] Defense counsel briefly discussed involuntary manslaughter with the defendant. Nothing in the record of the plea proceedings indicates that voluntary manslaughter was a realistic possibility or that counsel's assessment of the evidence amounted to ineffective assistance. Counsel is expected to "explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson, supra* at 647. Unlike the facts in *Henderson*, here counsel did just that.