COMMONWEALTH vs. JOSEPH PAUL EMILE BEGIN.

Hampshire.   January 8, 1985. — March 6, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Homicide. Malice. Practice, Criminal*, Plea. *Constitutional Law*, Plea.

A defendant's guilty plea to a charge of second degree murder was not in-
voluntary by reason of his not being informed that malice aforethought
was an element of the offense, where the defendant's admission at the
plea hearing that he fired his rifle first in the direction of the victim and
then her son constituted an admission of the necessary element of malice,
and where the record showed that the defendant's attorneys had responded
affirmatively when asked, at the hearing on the guilty plea, whether
they had fully discussed with the defendant the nature of the charges
against him. [196-198] O'CONNOR, J., dissenting.

INDICTMENT found and returned in the Superior Court on
October 11, 1974.
A motion for a new trial filed on April 3, 1980, was heard
by *Kent B. Smith*, J.
The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.
*Aaron W. Wilson* for the defendant.
*Charles K. Stephenson*, Assistant District Attorney, for the
Commonwealth.
NOLAN, J. The defendant was indicted for murder in the
first degree on October 11, 1974. On January 13, 1975, he
pleaded guilty to murder in the second degree. After a hearing,
a judge in the Superior Court accepted the plea and sentenced
the defendant to life imprisonment.[1]

---

[1] The defendant also pleaded guilty to two indictments charging assault
and battery with a dangerous weapon arising out of the same incident. He
does not challenge the validity of his plea with respect to those indictments.

On April 3, 1980, the defendant filed a motion for a new trial, arguing that his guilty plea was involuntary because he was not informed that malice aforethought is an element of the offense to which he pleaded. See *Henderson* v. *Morgan*, 426 U.S. 637 (1976). After a hearing, a Superior Court judge denied the defendant's motion. The defendant appealed, and we transferred the case to this court on our own motion. We affirm the denial of the defendant's motion for a new trial.

We summarize the facts.[2] At the hearing on the defendant's plea, State police Detective Lieutenant George W. Powers testified that he was called to the home of the victim, Louise Wildman, in Belchertown, during the early morning hours of September 16, 1974. According to Powers, the victim lived in this house with her five children, three boys and two girls, who ranged in age from four years to eleven years. The victim was divorced, and the defendant had been living with her in the house for approximately two months.

Powers testified that he observed the victim's body in the second floor hallway landing at the top of the stairs. The victim had been shot twice. One gunshot wound indicated that a bullet had entered the back of the victim's right shoulder and had severed the carotid artery and the larynx, causing her to bleed to death. The second gunshot wound was located on the victim's left arm. Two of the victim's children also sustained gunshot wounds. According to Powers, a total of four gunshots had been fired. Powers estimated that the crime had occurred around 1 A.M.

Based on information received from some of the children, "an alarm was put out" for the defendant. He was arrested in Ware, after a high speed chase, at approximately 6:35 that morning. Subsequently, he was transported to the Belchertown police station where he was informed of his rights. After signing a waiver of those rights, the defendant confessed that he shot the victim with a "Winchester lever action rifle" after

[2] The record includes the transcripts of the defendant's guilty plea hearing and the motion for a new trial, and the judge's findings on the defendant's motion for a new trial. The motion judge was not the judge who had accepted the plea originally.

the couple had had an argument and she had slapped him in the face. He said that he could not remember shooting the children.

According to Powers, the defendant stated that he remained in the house for about one hour after the shooting and drank some brandy and beer. He then left and threw the rifle into a wooded area across the street from the house. The defendant told the police that he later drove to his former wife's house and then to his son's house, but was unable to gain entrance to either house. He parked his car in the woods and fell asleep. After waking, he proceeded to drive to Ware and was then arrested.

Prior to Powers's testimony summarizing the relevant facts, the judge examined the defendant. In response to a series of questions posed by the judge, the defendant indicated that he understood the consequences of pleading guilty to the charges involved, and that he was pleading guilty freely, willingly, voluntarily, with full knowledge of what he was doing, and with full knowledge of the nature of the charges against him. The defendant responded in the affirmative when asked whether he understood that by pleading guilty he admitted as true all the facts essential and necessary to his convictions for the crimes involved.

The judge conducted a second examination of the defendant after Powers completed his testimony. He asked the defendant whether he wanted to comment upon Powers's description of the incident:

THE JUDGE: "Now, you heard Mr. Powers describe what happened and certainly not all the details that he might have in his possession, but certainly the broad outline and in considerable detail.

"Is there anything that you want to say about that? Is it true what happened to the best of your knowledge and belief?"

THE DEFENDANT: "Close."

THE JUDGE: "Anything you want to add or subtract?"

THE DEFENDANT: "Well, the drinking — I didn't drink after the crime."

THE JUDGE: "You didn't?"

THE DEFENDANT: "No."

THE JUDGE: "Well, what actually happened where there was shooting, you don't dispute that?"

THE DEFENDANT: "No."

After describing the punishment that he could impose if the defendant entered a guilty plea, the judge questioned the defendant with respect to his discussions with his attorneys:

THE JUDGE: "Have you discussed with your attorneys all the facts and other circumstances relating to your being involved in these crimes?"

THE DEFENDANT: "Yes."

THE JUDGE: "And have your attorneys discussed with you fully and completely the nature of the crimes with which you're charged, your rights, your defenses, and the consequences of pleas of guilty?"

THE DEFENDANT: "Yes."

The judge also addressed defense counsel, inquiring whether they had discussed fully with the defendant "the nature of the charges against him, his rights, his defenses, and the possibilities of success or failure if the case is tried and the possible consequences to him if he plead[ed] guilty." The defendant's attorneys responded affirmatively. The judge then accepted the defendant's plea and sentenced the defendant.

At the hearing on the defendant's motion for a new trial, the defendant testified that he did not know the meaning of the term "malice aforethought." He also stated that he had been instructed by his attorney to answer "yes" to any questions posed by the judge at the plea hearing, and that if there was anything he did not agree with they would "take care of" it.

Under further questioning by the judge hearing the motion for a new trial, however, the defendant replied that he had been told to answer "yes" to only some of the questions. The motion judge then asked the defendant to account for the fact that he had answered "[c]lose" when asked whether the facts as stated by Powers reflected what had actually happened. The defendant explained that he was unable to answer "yes" because, in this respect, the account was not true.

With regard to the circumstances surrounding the shooting, the defendant testified that when he fired the gun he intended only to scare the victim, and that he shot "high." He further testified that he shot toward the floor in order to scare the young boy. This testimony was inconsistent with Powers's testimony at the plea hearing that the defendant stated that he could not remember shooting the children.

The motion judge, who had a transcript of the hearing at which the defendant changed his plea, found that there was a representation by defense counsel that counsel had explained to the defendant the necessary elements of the crime. The motion judge further found that the defendant made an affirmative response admitting as true the facts as stated, and that the facts stated included the necessary elements of the crime. He found that the defendant admitted shooting the victim repeatedly from the back.

The defendant contends that his plea of guilty to murder in the second degree was involuntary under the standards set forth in *Henderson* v. *Morgan*, 426 U.S. 637 (1976). Because the defendant pleaded guilty in 1975 and the Court decided *Henderson* in 1976, the question arises whether *Henderson* is retroactive. We need not reach that issue, however, because, even assuming that the principles set forth in *Henderson* apply retroactively, the defendant's plea was valid. See *Osborne* v. *Commonwealth*, 378 Mass. 104, 107 (1979). See also *Commonwealth* v. *Earl*, 393 Mass. 738 (1985).

In *Henderson, supra* at 647, the Supreme Court decided that the defendant's guilty plea was involuntary and therefore reversed the judgment of conviction of murder in the second degree. The relevant New York statute defined murder in the second degree as the "killing of a human being . . . committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation." *Id.* at 645 n.14. The trial judge had found as fact that the defendant never was informed that this intent element was an essential element of murder in the second degree. *Id.* at 640. The Supreme Court decided that in the circumstances it was impossible to conclude that the defendant's plea was voluntary, because he

did not receive "real notice of the true nature" of the charge to which he pleaded guilty. *Id.* at 645, 646.

The Court recognized that the *Henderson* case was unique, in view of the judge's express finding that the element of intent was not explained to the defendant. *Id.* at 647. The Court suggested that the defendant's low mental capacity was also a factor bearing upon its disposition of the case. *Id.* The Court opined that the defendant's mental capacity provided a reasonable explanation for defense counsel's failure to explain the elements of the crime, and also lent "a modicum of credibility" to the argument that the homicide committed was manslaughter, rather than murder.

Under *Henderson*, therefore, a defendant must receive "real notice of the true nature" of the charge to which he pleads guilty. *Commonwealth* v. *Sullivan*, 385 Mass. 497, 509 (1982). In *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343-344 (1978), cert. denied, 439 U.S. 1120 (1979), we noted that the requirements mandated by *Henderson* can be satisfied in one of at least three ways: "(1) an explanation of the essential elements by the judge at the guilty plea hearing; (2) a representation that counsel has explained to the defendant the elements he admits by his plea; (3) defendant's statements admitting to facts constituting the unexplained element or stipulation to such facts."

The motion judge was correct in concluding that the defendant admitted as true the facts as stated by Powers, and that the facts stated included the necessary elements of murder in the second degree. Unlike the New York law applicable in *Henderson*, an intent to kill is not a necessary element of murder in the second degree under Massachusetts law. Instead, the Commonwealth must prove that there was an unlawful killing with malice aforethought. *Commonwealth* v. *McCauley*, 355 Mass. 554, 559 (1969). The necessary element of malice can be inferred from the use of a deadly weapon. *Commonwealth* v. *Soffen*, 377 Mass. 433, 441 (1979). "Malice aforethought includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." *Commonwealth* v. *Huot*, 380

Mass. 403, 408 (1980). The defendant admitted firing his rifle first in the direction of the victim and then her son. "The defendant's plea meets the standard of the *Henderson* case because the defendant admitted facts constituting, at the very least, the crime to which he pleaded guilty." *Osborne* v. *Commonwealth*, 378 Mass. 104, 108 (1979). We cannot accept the defendant's argument that the facts he adopted at the plea hearing would support a manslaughter theory. The defendant asserts that the victim slapped him in the face before he went into the bedroom, took the lever action rifle and fired it repeatedly. We decline to accept the defendant's argument that a jury could find reasonable provocation in these circumstances. See *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973); *S. C.*, 391 Mass. 123 (1984) (characterizing as "extravagant" the defendant's suggestion that scratches by the victim, his wife, "could serve as provocation for a malice-free but ferocious attack by the defendant with a deadly instrument").

In addition to the defendant's admissions, we agree with the motion judge's conclusion that the requirements of the *Henderson* case were satisfied by virtue of the representations by the defendant's attorneys that the nature of the crimes to which the defendant pleaded had been explained to him. The record clearly shows that defense counsel responded affirmatively when asked whether they had fully discussed with the defendant the nature of the charges against him. The judge at the plea hearing credited this testimony, and we are unwilling to accept the defendant's argument that defense counsel's answer to the judge's question was insufficient to show that the defendant had been apprised of the elements of murder in the second degree.

The denial of the defendant's motion for a new trial is affirmed.

*So ordered.*

O'CONNOR, J. (dissenting). A guilty plea involves the waiver of several Federal constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin* v. *Alabama*, 395 U.S. 238, 243 (1969). Therefore, "as a matter of constitutional due process, a guilty plea should not be accepted, and if accepted must later be set aside, unless the record shows affirmatively that the defendant entered the plea freely and understandingly." *Commonwealth* v. *Foster,* 368 Mass. 100, 102 (1975). A guilty plea is not voluntarily and understandingly made, in the sense that it constitutes an intelligent admission that a defendant committed an offense, unless the defendant received "real notice of the true nature of the charge against him." *Henderson* v. *Morgan,* 426 U.S. 637, 645 (1976), quoting *Smith* v. *O'Grady,* 312 U.S. 329, 334 (1941). Thus, a defendant does not enter a voluntary plea of guilty unless he admits to, or is informed of, all the essential elements of the offense. See *Henderson, supra* at 646-647. Today, the court concludes that the defendant Begin's plea was voluntary under *Henderson* either because he admitted the essential elements of murder in the second degree, or because the record shows that he was informed of those elements before he entered his plea. I disagree.

In *Henderson,* the defendant had pleaded guilty to murder in the second degree under a New York statute which made intent an essential element of the offense. Under New York law, intent could be inferred from the use of a deadly weapon. *Id.* at 646 n.17. The defendant had not been informed of the intent requirement, but had admitted stabbing the victim repeatedly with a knife. The Supreme Court noted that the element of intent "would almost inevitably have been inferred" by a jury from the repeated stabbing of the victim. *Id.* at 645. Nevertheless, the Court held that the defendant's admission that he killed the victim did not "necessarily also admit that he was guilty of second-degree murder." *Id.* at 646. Because there was nothing in the record that would serve as a substitute for a finding after trial, or a voluntary admission, that the defendant had the requisite intent, the plea was not voluntary. *Id.*

In *Commonwealth* v. *McGuirk,* 376 Mass. 338, 343-344 (1978), cert. denied, 439 U.S. 1120 (1979), we reasoned that the requirements of *Henderson* had been satisfied even though the defendant did not know the essential elements of the crime which he admitted by his plea, because the defendant had admitted facts which *necessarily* constituted the unexplained element. In *McGuirk,* as in this case, the defendant alleged that he was not informed that malice was an essential element of murder in the second degree. The defendant had, however, admitted to a "protracted beating" of the victim. *Id.* at 347. He did not claim, and the circumstances of the killing did not suggest, that he was justified in striking the victim or that his degree of culpability was mitigated because he acted in the heat of passion on reasonable provocation. McGuirk's claim at the hearing on his motion for a new trial that "he did not intend to inflict serious bodily injury on the victim," *id.* at 346, tended to contradict his earlier admission at the plea hearing that he "just started hitting on him, and . . . didn't stop until [he] realized what — [he] just kept on hitting him." *Id.* at 340. We noted that "[a]n intention to inflict injury on the victim which is not justified on any lawful ground or palliated by the existence of any mitigating circumstances is malicious within the meaning of the law." *Id.* at 345. We reasoned that the circumstances of the killing, as admitted by McGuirk, "*necessarily impl[ied]* that the defendant acted with the requisite intent," *id.* at 347, and that McGuirk's admission to a "protracted beating" was, in essence, an admission of malice (emphasis added). Rightly or wrongly, we simply interpreted McGuirk's testimony at the plea hearing as an admission of intent to injure the victim seriously. We distinguished our holding in *McGuirk* from the Supreme Court's holding in *Henderson,* stating that "[i]n *Henderson* there were no statements by the defendant or his counsel *necessarily implying* that the defendant acted with the requisite intent. In contrast, McGuirk's admission to a protracted beating was an admission of the element of malice necessary to constitute murder in the second degree." (Emphasis added.) *McGuirk, supra* at 347.

In several cases decided since *McGuirk,* we have similarly sustained guilty pleas against constitutional challenges based on *Henderson.* In *Commonwealth* v. *Soffen,* 377 Mass. 433, 441 (1979), the defendant had admitted shooting the victims repeatedly in the head. In *Commonwealth* v. *Huot,* 380 Mass. 403, 405-406 (1980), the defendant had admitted killing a woman who had been beaten to death with "hard punches and a shod foot." In *Commonwealth* v. *Swift,* 382 Mass. 78, 80 n.2 (1980), the defendant admitted killing the victim by beating him over the head with window weights. In each of these cases, we concluded that the defendants, by their admissions, had in effect admitted that they had acted with malice aforethought.

Purporting to rely on *McGuirk,* the court today concludes that Begin's plea was voluntary because he admitted facts which *permit* an inference of the essential element of malice. The court thus ignores the critical distinction between *McGuirk* and *Henderson.* At the plea hearing, Begin admitted that he fired a rifle and that the victim received two gunshot wounds from behind, one of which caused her death. At the hearing on his motion for a new trial, the defendant did not contradict any of the facts which he had admitted at the plea hearing. Rather, he described a version of events in which he accidentally shot the victim in circumstances which could support a finding of manslaughter. The defendant alleges that he and the victim had been arguing, and that she had slapped and tripped him so that he fell down against a wall. The defendant claims that he then took his rifle and fired it into the darkened bedroom where the victim had gone, intending only to frighten her. He also testified that he fired toward the floor to frighten one of the victim's sons back into his bedroom. He claimed that he did not intend to injure the victim or the children. There is no inconsistency between the defendant's story at the hearing on his motion for a new trial and his admission at the plea hearing. On the basis of the admission at the plea hearing, a jury would be warranted in finding the defendant guilty of manslaughter. A jury might find that the defendant had unintentionally killed the victim "by an act which constitutes such a disregard of prob-

able harmful consequences to another as to constitute wanton or reckless conduct," and therefore was guilty of involuntary manslaughter. See *Commonwealth* v. *Martinez*, 393 Mass. 612, 613 (1985); *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967); *Commonwealth* v. *Hawkins*, 157 Mass. 551, 553 (1893).

It is true, as the court states *ante* at 197, that "[t]he necessary element of malice can be inferred from the use of a deadly weapon." The same was true of the element of intent to kill in *Henderson*. However, the relevant question is not whether malice *can be* inferred from the admitted facts. Rather, it is whether from those admissions malice is necessarily implied and, therefore, is admitted. See *Henderson, supra* at 646; *McGuirk, supra* at 347. Because a finding that the defendant acted without malice would be consistent with the facts he admitted at his plea hearing, it cannot properly be said that the defendant admitted facts necessarily implying the element of malice. This case thus differs from *McGuirk, Soffen, Swift,* and *Huot.*

It may be unlikely that the defendant would convince a jury that he acted without malice in firing a gun in the direction of the victim and her son, and it may be that, as the Supreme Court opined in *Henderson, supra* at 645, a jury would "almost inevitably" infer the necessary element of malice from the defendant's acts. However, under the due process clause, this court's appraisal of the likelihood that a defendant is in fact guilty of murder or that a jury would find him so is not a sufficient ground to uphold his conviction. When a defendant has not admitted that he acted with malice, we must presume that he did not, unless and until a jury finds that he did.

As an alternative ground for upholding the validity of the defendant's plea, the court holds that the requirements of *Henderson* were met "by virtue of the representations by the defendant's attorneys that the nature of the crimes to which the defendant pleaded had been explained to him." *Ante* at 198. The court relies on our statement in *McGuirk* that a plea will be considered voluntary if the record includes "a representation that counsel has explained to the defendant the elements he

admits by his plea." *McGuirk, supra* at 343-344. However, that statement in *McGuirk* must be understood in the light of well-established principles governing the acceptance of guilty pleas. The Commonwealth always has the burden of proving that a defendant's plea was voluntary. *McGuirk, supra* at 341 n.4. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Commonwealth* v. *Foster*, 368 Mass. 100, 106 (1975), quoting *Boykin* v. *Alabama*, 395 U.S. 238, 243-244 (1969).

At the defendant's plea hearing, the judge asked defense counsel whether they had "discussed fully with your client the nature of the charges against him, his rights, his defenses, and the possibilities of success or failure if the case is tried and the possible consequences to him if he pleads guilty?" Counsel responded that they had. That bare statement cannot be sufficient to meet the Commonwealth's burden of proving that the defendant knew that malice was an element of murder in the second degree and knew what constitutes malice. Compare *Commonwealth* v. *Swift, supra* at 81 (prior defense counsel testified that he told defendant that malice was an element of murder in the second degree and equated it with intent to do harm).

At best, defense counsel's representation that they had explained the nature of the crime to the defendant establishes only that counsel believed they had done so. In an ideal world, we could rely on such a statement, confident that the defendant was accurately and adequately informed of the essential elements of the crime. Unfortunately, our cases show that all too often attorneys and judges either do not know or misstate the elements of a crime. See, e.g., *Commonwealth* v. *Perry*, 389 Mass. 464, 468 (1983) (defense counsel defined murder in the second degree as the "deliberate, premeditated killing of an individual without malice"). To hold that a statement that counsel "has explained the nature of the crime" is sufficient to show that the defendant possesses the necessary "understanding of

the law in relation to the facts" is to place form over substance. It evidences a retreat from this court's prior exhortations that judges should "direct their questions as to make them a real probe of the defendant's mind," in order that the plea hearing does not become a mere "litany." *Commonwealth* v. *Fernandes*, 390 Mass. 714, 716 (1984). *Commonwealth* v. *Foster, supra* at 107.

Because I would conclude that the defendant's plea is not voluntary under the standards of *Henderson* v. *Morgan*, 426 U.S. 637 (1976), I would reach the issue whether that decision should be applied retroactively. "Decisional law usually is retroactive." *Commonwealth* v. *Breese*, 389 Mass. 540, 541 (1983). Only if a decision establishes "a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed," do we consider whether it should have only prospective application. *Id.* at 542, quoting *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 106 (1971). Therefore, we must determine whether Henderson establishes a new rule of law.

It was firmly established, long before the Supreme Court's 1976 decision in *Henderson*, that a conviction following entry of a guilty plea violates due process and is therefore void, unless the record shows that the plea was voluntary. See, e.g., *Machibroda* v. *United States*, 368 U.S. 487, 493 (1962); *Von Moltke* v. *Gillies*, 332 U.S. 708 (1948); *Waley* v. *Johnston*, 316 U.S. 101 (1942). In *Henderson*, the Court held that a plea is not voluntary unless the record shows that the defendant understood or admitted all the essential elements of a crime he admits by his plea. That holding was not "a clear break with the past," *Breese, supra*, quoting *Desist* v. *United States*, 394 U.S. 244, 248 (1969). Rather, it was "clearly foreshadowed" by the Supreme Court's decisions in *Boykin* v. *Alabama*, 395 U.S. 238 (1969), and *McCarthy* v. *United States*, 394 U.S. 459 (1969).

In *Boykin*, the Court held that the voluntariness of a guilty plea could not be presumed from a silent record. In its opinion, the Court discussed the rationale behind the requirement that a

plea be voluntary: "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and punishment." 395 U.S. at 242. Thus, the Court reasoned, judges have a duty to ensure that the accused "has a full understanding of what the plea connotes." *Id.* at 244.

The *Boykin* opinion drew support for its conclusions from the Supreme Court's decision in *McCarthy* v. *United States, supra. McCarthy* dealt with the requirements of Rule 11 of the Federal Rules of Criminal Procedure, which governed the acceptance of guilty pleas in Federal courts. *Boykin* v. *Alabama, supra* at 243 n.5. In *McCarthy*, the Court observed that due process requires that a guilty plea be voluntary in a constitutional sense. Discussing the constitutional requirements, the Court stated "because a guilty plea is an admission of *all the elements* of a formal criminal charge, *it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts*" (emphasis added). *McCarthy, supra* at 466. The Federal rule, the Court reasoned, was designed to protect a defendant who pleaded guilty "with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* at 467.

The Supreme Court's holding in *Henderson* was merely an application of the principles set forth in *Boykin* and *McCarthy.* The requirement that a defendant understand or admit all the elements of the charge to which he pleads clearly follows from the principle that a plea is not voluntary "unless a defendant possesses an understanding of the law in relation to the facts." *Boykin, supra* at 243 n.5, quoting *McCarthy, supra* at 466. Thus, *Henderson* did not set forth a *new* rule of law, and its holding should apply retroactively to Begin's plea. Because I conclude that his plea was not voluntary under those standards, I would reverse the judgment and remand the case to the Superior Court for trial or plea.