COMMONWEALTH *vs.* ANTHONY P. COLANTONI.

Suffolk.  October 8, 1985. — February 5, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Criminal,* Plea, Assistance of counsel, New trial.

At the hearing on a criminal defendant's pleas of guilty, the judge did not violate Mass. R. Crim. P. 12 (c) (5) by permitting defense counsel to question the defendant as to the voluntariness and factual basis of his pleas, where it appeared that the defendant, whose intelligence was in the "dull normal" range, was experiencing extreme difficulty in responding to the questions initially put to him by the judge. [677-678]

At the hearing on the acceptance of a criminal defendant's guilty pleas, two of which were to charges requiring proof that the defendant had been armed, failure of defense counsel during colloquy with the defendant to elicit a clear admission from him that he had been armed during commission of the crimes did not prevent his pleas from being properly accepted, where the record of the entire hearing, including the prosecutor's recitation of the evidence the Commonwealth intended to present, and the defendant's affirmative response to an inquiry by the clerk, demonstrated the defendant's intent to admit to the "armed" element of the two crimes. [678-682]

The record of proceedings culminating in a defendant's pleas of guilty to criminal charges did not support his allegation that he had been denied the effective assistance of counsel. [682]

The presence of certain hearsay statements in an affidavit submitted in support of a criminal defendant's motion for a new trial did not require the judge to hold an evidentiary hearing before denying the motion. [682]

INDICTMENTS found and returned in the Superior Court Department on April 15, 1981.

The cases were heard by *Roger J. Donahue,* J., and posttrial motions were considered by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David C. Casey (Michael King* with him) for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On December 4, 1981, a judge of the Superior Court accepted the defendant's plea of guilty to indictments on three charges: (1) breaking and entering a dwelling at night, while armed, with intent to commit larceny and making an assault on an occupant of the dwelling; (2) armed robbery; and (3) assault and battery by means of a dangerous weapon. The judge sentenced the defendant to imprisonment for life on the first charge, imprisonment for eight to ten years, to be served from and after the life term, on the charge of armed robbery, and imprisonment for eight to ten years on the last charge, to be served concurrently with the sentence for armed robbery. A year and one half later, the defendant filed a pro se motion for a new trial. His motion was denied, and the defendant appealed. Following appointment of counsel, the defendant filed a motion for reconsideration of the denial of his pro se motion. This motion also was denied, and the defendant appealed. The Appeals Court consolidated the appeals, and we transferred the case here on our own motion.

We review briefly the factual background of the case as outlined by the prosecutor at the joint plea hearing of the defendant and his brother Ralph, a codefendant. On March 13, 1981, at 1:40 A.M. three Boston police officers responded to a radio call based on a report of a woman screaming. As they arrived at a house occupied by two sisters, Vilma and Martha Magoch, they were met on the lawn by Vilma, who cried, "Hurry, they are going to kill my sister upstairs." Officer Michael Dowd entered the house, saw the defendant's brother, Ralph Colantoni, on a stairway landing, ran up the stairs, and caught him. After handing Ralph down the stairs to the other two police officers, Officer Dowd looked into the bedroom of the second sister, Martha, and saw the defendant choking her and hitting her with an eighteen-inch stick. Officer Dowd seized the defendant and brought him downstairs. The defendant and his brother were arrested, advised of their rights, and searched. Two rings, a watch, and a necklace belonging to Martha Magoch were recovered from the defendant's pocket. Martha

Magoch told the police officers that, after the brothers broke into her bedroom, the defendant had threatened her, saying, "Where is the money? Give me the money or I'll kill you."

The defendant was found competent to stand trial after an extended series of examinations. At the plea hearing, the defendant's counsel explained to the judge the extreme difficulty the defendant had in expressing himself. Speech came late to the defendant; he did not speak before age three. His intelligence was reported to be in the dull normal range, with IQ test results between sixty-seven and seventy-five. In stressful situations, the defendant's difficulty in speaking was aggravated.

The defendant's counsel indicated that he had discussed with the defendant the questions which the defendant would be expected to answer. Counsel stated that the defendant "expressed his full understanding of the questions, his perceptions and answers to them, and the consequences." Counsel anticipated that the judicial proceeding and the plea colloquy would be especially difficult for the defendant and suggested that the colloquy might be conducted more easily by the defendant's counsel, as the defendant might be more comfortable answering his attorney. The trial judge rejected his suggestion, relying on our statement in *Commonwealth* v. *Morrow,* 363 Mass. 601, 605 (1973), that it is better that the judge ask the questions. Counsel then suggested that it might be easier if the colloquy with the defendant's brother, also pleading guilty at the hearing to the same charges, could be held first, so that the defendant could become familiar with the proceeding. The judge adopted this suggestion.

The indictments against the brother were read. The prosecutor then related the facts which the Commonwealth would have introduced at trial. He displayed the stick which Officer Dowd had seen the defendant use to hit Martha Magoch. After the colloquy with the defendant's brother, the judge attempted to question the defendant. It soon became impossible to continue the colloquy. The defendant was unable to verbalize his answers and could only nod his head. At this point the judge asked the defendant's counsel to conduct the questioning. Be-

cause of the defendant's continuing difficulty, the judge ordered a recess to give him an opportunity to collect his thoughts.

When the hearing resumed, the indictments against the defendant were read, and the defendant was asked by the court clerk, "[D]id you do these things as charged?" The defendant replied, "Yes, I did." The defendant's counsel then continued the questioning. The pertinent part of the resultant colloquy is set forth in the margin.[1] Following this series of questions, the judge accepted the defendant's guilty pleas.

---

[1] DEFENSE COUNSEL: "Do you know what you are charged with in those indictments?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Did you hear the statement that the District Attorney made before?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Do you understand that that would be the testimony given against you by the women and the police officers involved in this case?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "On the night of March 13th did you break into that house?"

THE DEFENDANT: "Yes, I did."

DEFENSE COUNSEL: "Did you break into that house with the intention of taking things, stealing things?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "While you were in that house did you break into that lady's bedroom?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "As a result of your breaking into that lady's bedroom was she struck? Was she hit somehow?"

THE DEFENDANT: "Yes, she was."

DEFENSE COUNSEL: "While you were in that lady's bedroom did you place your hand over her mouth?"

THE DEFENDANT: "Yes, I did."

DEFENSE COUNSEL: "Did you take rings off that lady's finger?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Have you talked this case over with me?"

THE DEFENDANT: (Nodding.)

DEFENSE COUNSEL: "Okay. Do you plead guilty willingly, freely and voluntarily?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Do you understand what those terms mean?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Has anybody promised you anything or made you

The defendant claims, first, that he did not admit to facts constituting an armed assault. He argues that, since being armed is an essential element of armed robbery and of assault and battery by means of a dangerous weapon, it follows that his pleas of guilty to these charges were invalid and should not have been accepted by the judge. The defendant argues that it was the duty of the judge to ask the questions, and that his failure to do so caused him to overlook the crucial omission. The defendant claims, second, that his trial counsel failed to conduct pretrial discovery, that this failure and counsel's consequent advice to plead guilty constituted ineffective assistance of counsel, and that the defendant's pleas were therefore invalid. The defendant claims, third, that the trial judge was required to make findings on the allegations of the defendant's motion for a new trial, and that the summary denial of the motion without an evidentiary hearing was an abuse of discretion. We conclude that there was no error.

or induced you to plead guilty?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Has anybody forced you to plead guilty?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Have any threats been made to make you plead guilty? Threats against you?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Do you feel you have had enough time to talk to me about this case?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Do you have any questions for me now about what's going on here or about this case?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Do you feel that I have acted fairly for you, in your best interest?"

THE DEFENDANT: "Yes."

DEFENSE COUNSEL: "Are you confused in any way by anything that's happened here today?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Are you confused in any way by any of the questions that have been asked you today?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Do you want to talk to me now about any part of this procedure right now?"

THE DEFENDANT: "No."

DEFENSE COUNSEL: "Do you still wish to plead guilty and have the Court accept your plea of guilty?"

THE DEFENDANT: "Yes."

1. *Plea colloquy.* We consider both aspects of the defendant's claim that his guilty plea was invalid: the delegation to defense counsel of the judge's role in questioning the defendant; and the alleged failure of the defendant to admit to sufficient facts to permit a guilty finding on those charges that included an element of being armed.

(a) *The role of the trial judge in the plea procedure.* Rule 12 (c) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 866 (1979), provides in part:

> "(5) *Hearing on Plea; Acceptance.* The judge shall conduct a hearing to determine the voluntariness of the plea and the factual basis of the charge.

> "(A) FACTUAL BASIS FOR CHARGE. A judge shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the charge. The failure of the defendant to acknowledge all of the elements of the factual basis shall not preclude a judge from accepting a guilty plea. Upon a showing of cause the tender of the guilty plea and the acknowledgement of the factual basis of the charge may be made on the record at the bench."

The defendant argues that the language of the rule specifying that "[t]he judge shall conduct a hearing" mandates that the judge ask the questions to determine the validity of the plea.[2] We have stated before that, while desirable, it is not essential that the judge ask the questions.

"Nor is it crucial that most of the questions were asked by the defendant's attorney, rather than the judge. . . . However,

---

[2] Cf. Mass. R. Crim. P. 12 (c), which provides in part:

"After being informed that the defendant intends to plead guilty or nolo contendere:

"(1) *Inquiry.* The judge shall inquire of the defendant *or his counsel* as to the existence of and shall be informed of the substance of any agreements that are made which are contingent upon the plea" (emphasis supplied).

There is no claim that this part of the rule's requirements was violated.

the spontaneity and flexibility of the dialogue, which supports a conclusion of voluntariness, can best be achieved where the judge asks the questions. This also avoids even the appearance that the colloquy is but a prearranged script. Therefore, we think it would be better practice for the judge to ask the questions, just as we think it would be better practice to include specific inquiry as to the defendant's understanding waiver of the three constitutional rights." *Commonwealth* v. *Morrow,* 363 Mass. 601, 605 (1973). The facts of the case at bar demonstrate that the trial judge, aware of *Morrow,* made a considerable effort to question the defendant directly. Only after he had attempted to proceed by conducting the colloquy himself, with little success, did he permit counsel — at counsel's request — to become involved in the questioning. Even then, we note that the judge carefully directed and followed the colloquy. We cannot say, in light of the judge's substantial compliance with the requirements of rule 12, that the judge did not "conduct" the hearing as required by rule 12 (c) (5).[3]

(b) *The defendant's admissions.* Two of the three crimes of which the defendant was convicted include an element of being armed. *Commonwealth* v. *Appleby,* 380 Mass. 296, 306 (1980) (assault and battery by means of a dangerous weapon requires assault by means of a dangerous weapon and intentional, unjustified touching by means of that same dangerous weapon). *Commonwealth* v. *Howard,* 386 Mass. 607, 608 (1982) (offense is not armed robbery unless perpetrator possessed weapon).

The Supreme Court of the United States, in *Henderson* v. *Morgan,* 426 U.S. 637, 646 (1976), held that a guilty plea is

---

[3] The special circumstances in this case made imperative special care in the conduct of the proceeding. The defendant was of limited intelligence. Compare *Henderson* v. *Morgan,* 426 U.S. 637 (1976) (defendant's IQ between 68 and 72). In proceedings involving the knowing, intelligent, and voluntary waiver of constitutional rights, the defendant "must be provided with adequate comprehensible information about the particular right, and that involves patient care where the defendant has limited education or mental resources." *Ciummei* v. *Commonwealth,* 378 Mass. 504, 515 (1979) (dictum). It is apparent that the judge was attempting to exercise the "patient care" called for in regard to this defendant's pleas.

involuntary and cannot serve as an intelligent admission of guilt if the defendant is ignorant of a critical element of the offense and makes no factual statement or admission necessarily implying that element. As we read *Henderson,* the guilty plea will not be involuntary if the record shows affirmatively, see *Commonwealth* v. *Foster,* 368 Mass. 100, 102 (1975), either: (1) an explanation by the judge of the elements of the crime; or (2) a representation that counsel has explained to the defendant the elements he admits by his plea; or (3) defendant's statements admitting facts constituting the unexplained elements. *Commonwealth* v. *McGuirk,* 376 Mass. 338, 343-344 (1978), cert. denied, 439 U.S. 1120 (1979). See *Commonwealth* v. *Begin,* 394 Mass. 192, 197 (1985). The defendant's affirmative response to the facts as stated by another, if those facts contain the necessary elements of the crime, is sufficient to satisfy the *Henderson* test. *Commonwealth* v. *Soffen,* 377 Mass. 433, 442 (1979). See *Commonwealth* v. *Swift,* 382 Mass. 78, 84 (1980).

Turning to the transcript of the defendant's plea hearing, we find no explanation by the judge of the elements of the crimes. See *Commonwealth* v. *Foster, supra.* Colantoni's trial counsel did not represent clearly that he had explained the elements of the crimes to his client, but only that he had gone over the questions to be asked in the plea hearing.[4] Counsel's representation, by itself, does not suffice to establish the defendant's understanding.[5]

---

[4] "I have gone over with Anthony Colantoni on several occasions the questions which we expect to put to him during the course of this proceeding. In private consultation with me, he has not only [*sic*] expressed his full understanding of the questions, his perceptions and answers to them, and the consequences."

[5] A credible, specific representation by trial counsel that he has explained the elements of the crime to the defendant may, in some cases, standing alone, satisfy the constitutional requirements of *Henderson.* See *Commonwealth* v. *Begin, supra* at 198. While it may be acceptable, this is not the best, nor the most reliable, mechanism by which the defendant's plea may be shown to be free, voluntary, and intelligent. See *id.* at 202-204 (O'Connor, J., dissenting).

"When a careful inquiry is not made before acceptance of the plea, a defendant with a legitimate reason to challenge the voluntariness of his plea

We look, however, to the other aspects of the proceeding to determine whether, in the entire circumstances, the record establishes the defendant's pleas to have been knowingly and voluntarily made. The gravamen of a claim under *Henderson* is that the defendant was unaware of the facts he was impliedly admitting by his plea and that he did not intend to admit those facts. A showing that the defendant admitted the facts constituting the crime negates his claim, even if he is not aware that the facts he admitted are the elements of the crime. See *Commonwealth* v. *McGuirk, supra* at 347. The admission may be an assent to facts stated by another, so long as the assent is clearly an agreement to that statement. See *Commonwealth* v. *Soffen, supra.* Here, it is clear that the defendant admitted facts constituting breaking and entering a dwelling house at night with intent to commit larceny and making an actual assault on a lawful resident of the house,[6] robbery,[7] and assault

is left to make his attack in postconviction proceedings, perhaps many months or years after the plea was tendered, when his motives may be highly suspect, and the credibility of his evidence, even if available, is likely to be seriously questioned. . . . To place a defendant in such a posture is inconsistent with a proper recognition of the value that ought to be, and is attached by the Supreme Court and this court to the constitutional rights involved." (Citations omitted.) *Commonwealth* v. *Fernandes,* 390 Mass. 714, 721 (1984).

[6] See G.L. c. 266, § 14, which reads in pertinent part: "Whoever breaks and enters a dwelling house in the night time, with intent to commit a felony, or whoever, after having entered with such intent, breaks such dwelling house in the night time, any person being then lawfully therein, and the offender being armed with a dangerous weapon at the time of such breaking or entry, or so arming himself in such house, or making an actual assault on a person lawfully therein, shall be punished by imprisonment in the state prison for life or for any term of not less than ten years."

As the defendant concedes in his brief, he is "technically guilty" of "break[ing] and enter[ing] a dwelling house in the night time, with intent to commit a felony, . . . and . . . making an actual assault on a person lawfully therein." His conviction on this charge thus does not turn on the contested "armed" element of the other two charges.

[7] See G.L. c. 265, § 19: "Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals and takes from the person of another money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years." Section 19 was amended by St. 1981, c. 678, § 4. The version quoted was applicable at the time of the defendant's activities in 1981.

and battery.[8] Although there is not as clear an admission by the defendant that he was armed during the commission of these crimes, the Commonwealth argues that the defendant assented to the prosecutor's statement of facts constituting the unexplained elements of the crimes charged, that is, the armed assault. The Commonwealth correctly reports that the prosecutor related, in the defendant's presence, Officer Dowd's proposed testimony, including a statement that he observed the defendant holding an eighteen-inch stick, choking Martha Magoch, and that he saw the defendant strike her. The prosecutor displayed the stick "that Officer Dowd observed Anthony Colantoni [use in] striking Martha Magoch over her head." Additionally, after the prosecutor stated the Commonwealth's intended evidence of the facts, the clerk inquired of the defendant:

> "Anthony P. Colantoni, with regards to Indictment 034954 which charges that you on the 13th of March, 1981 a dwelling house in the nighttime did break and enter with intent to commit larceny and did make an assault upon an occupant lawfully therein, *being armed with a certain weapon*; and with regard to Indictment 034955 which charges that you on that same day *armed with a dangerous weapon* did assault Martha Magoch with intent to rob her and did rob a watch, rings and necklace of her property; and Indictment 034956 which charges that you on the same day *did commit an assault and battery upon one Martha Magoch with a dangerous weapon, to wit, an eighteen-inch stick*; did you do these things as charged" (emphasis supplied)?

The defendant answered, "Yes, I did."

It is true that the prosecutor's recitation of facts was made during the plea hearing of Ralph Colantoni, the defendant's brother, but the taking of the pleas from the two brothers was

---

[8] See G. L. c. 265, § 13A (1984 ed.), which reads in pertinent part: "Whoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than two and one half years in a house of correction or by a fine of not more than five hundred dollars."

done in one unified hearing of short duration. The defendant was reminded of the prosecutor's recitation of the evidence which could be offered against him, as a coventurer with his brother.[9]

We reject the defendant's suggestion that we focus only on a portion of the plea hearing. Rather, we have examined the entire record in light of the various methods by which a defendant's understanding of the elements of the crime to which he pleads guilty may be shown. The case is a close one, but, taking the record as a whole, we conclude that there was an adequate showing of the defendant's intent to admit the "armed" element of the crimes.

2. *Assistance of counsel.* The defendant claims that his trial counsel did not conduct pretrial discovery, and that this failure constituted ineffective assistance of counsel. We are not convinced that the defendant's unsupported allegation is true. In light of the record, we do not agree that counsel's assistance was constitutionally ineffective. See *Strickland* v. *Washington,* 466 U.S. 668 (1984); *Commonwealth* v. *Fuller,* 394 Mass. 251, 255-256 & n.3 (1985); *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). There is no showing that counsel's tactics deprived the defendant of any substantial ground of defense or that he lost any right in the entry of his pleas of guilty.

3. *Lack of findings on defendant's renewed motion for new trial.* The defendant submitted the affidavit of a private investigator in support of his motion for reconsideration. The investigator stated that Officer Dowd told the investigator that Dowd did not see the defendant strike Martha Magoch. This statement would contradict directly the police reports signed by Officer Dowd. The investigator's affidavit contains hearsay evidence, available only for impeachment, and does not trigger the need for an evidentiary hearing. The judge is not required to believe such affidavits. *Commonwealth* v. *Toney,* 385 Mass. 575, 580-581 (1982). *Commonwealth* v. *Stewart,* 383 Mass. 253, 258 (1981).

---

[9] See note 1, *supra.*

4. *Conclusion.* The orders denying the defendant's motion for new trial and for reconsideration of the denial properly were made. There is no error. The orders are affirmed.

*So ordered.*