COMMONWEALTH vs. ROY E. McGUIRK.

Middlesex. February 6, 1978. — September 8, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Practice, Criminal*, Plea. *Homicide*.

A defendant's guilty plea to a charge of second degree murder was not involuntary by reason of his not being told that malice aforethought is an element of the offense, where the defendant's admission at the plea hearing to a protracted beating of the victim constituted an admission of the malice element necessary for murder in the second degree. [341–348]

INDICTMENT found and returned in the Superior Court on *October 10, 1974.*

A motion for leave to withdraw a plea of guilty and for a new trial was heard by *Moynihan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Stephen Hrones* for the defendant.

*Kathleen King Parker,* Assistant Attorney General, for the Commonwealth.

ABRAMS, J. The defendant Roy E. McGuirk was convicted of murder in the second degree on his plea of guilty. McGuirk now seeks to withdraw his guilty plea on the ground that it was involuntary because he was not informed that malice aforethought is an element of the offense to which he pleaded.[1] See *Henderson* v. *Morgan,* 426 U.S. 637 (1976).

---

[1] Other grounds which were urged before the trial court but which were not briefed or argued before this court are deemed waived. *Stranad* v. *Commonwealth,* 366 Mass. 847 (1974). *Commonwealth* v. *Ellis,* 356 Mass. 574, 575 (1970). Cf. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

The defendant was indicted for murder in the first degree on October 1, 1974. On July 14, 1975, his guilty plea to murder in the second degree was accepted, and he was sentenced to a life term at the Massachusetts Correctional Institution at Walpole. On July 16, 1976, the defendant moved for a new trial which motion was denied after an evidentiary hearing on the voluntariness issue. The defendant appealed under G. L. c. 278, §§ 33A-33G. We affirm the denial of the defendant's motion for a new trial.

We summarize the facts.[2] At about 6 A.M. on June 29, 1974, the defendant returned to his apartment after an evening of partying. He had been drinking and had consumed three "speed" tablets, the last of which had been taken at 3:30 A.M. In his apartment he found Lynn Darcey, a young woman whom the defendant had at one time allowed to live there, and the victim, Nicholas Zoffreo, who was a stranger to the defendant. He was surprised by their presence and very angry that his apartment was being used without his permission. An argument developed among the defendant, Lynn Darcey, and the victim; the defendant struck the victim and continued beating him until he was dead.

On October 23, 1974, the defendant was arraigned. He was represented by appointed counsel, at present a member of the judiciary, who continued to represent the defendant through his guilty plea. It is conceded that the defendant received competent advice and representation at all times. At the arraignment, the indictment charging the defendant with murder in the first degree was read to him, and he pleaded not guilty.

At the time the case was reached for trial, and after consulting with his family and counsel, the defendant decided to plead guilty to murder in the second degree. At

---

[2] The record consists of the transcripts of the defendant's arraignment, guilty plea hearing, and motion for a new trial; an affidavit of defense counsel; a psychiatric report; and the judge's findings on the defendant's motion for a new trial.

the change of plea hearing, the judge questioned the defendant concerning his age and educational background. The defendant stated that he was twenty-five years old and that he had completed three years of high school. The judge then asked the defendant, "Do you understand the charge against you?" The defendant replied that he did. The judge continued, "To make it perfectly clear, you are being charged with the crime of murder. The indictment charges that on the 29th day of June 1974 at Cambridge, you did assault and beat one Nicholas Zoffreo with intent to kill and murder him, and by such assault and beating did kill and murder Nicholas Zoffreo. Now, do you understand this charge against you?" McGuirk replied, "Yes, sir."

The judge then asked the defendant to relate the facts of the June 29 incident. The defendant explained his anger at finding his apartment being used in his absence and stated that an argument had ensued. The defendant then said: "Nicky came towards me; I thought he was going to hit me or something. I just started hitting on him, and I didn't stop until I realized what—I just kept on hitting him, I didn't realize I killed him. I just panicked from there." The defendant admitted striking the first blow and also stated that he was sorry for what had happened for he was "not a person that goes around killing people like that." The detective who had investigated the homicide testified at the plea hearing. He related statements from an eyewitness that the defendant had thrown a fit of temper and had beat, kicked, and strangled the victim with a rope or wire and had suffocated him with pillows and blankets.[3] The detective said that

---

[3] Defense counsel, who is characterized by McGuirk as experienced and capable, did not quarrel with this factual recitation at the plea hearing. However, at the evidentiary hearing on the motion for a new trial the defendant attempted to introduce some documents, including an autopsy report, to rebut some of these statements by the eyewitness. The documents were excluded. The defendant, however, has failed to argue his exceptions concerning these documents before this

the defendant had made an admission to the person who had helped him dispose of the body in the Charles River that he had received rope burns as a result of the pressure used in garrotting the victim. After informing the defendant of the constitutional rights being waived by him and the maximum penalty for murder in the second degree and inquiring into the voluntariness of the plea, the judge accepted the guilty plea.

The defendant now argues that his plea is invalid under *Henderson* v. *Morgan*, 426 U.S. 637 (1976), because "[a]t the guilty plea hearing no inquiry was made as to whether the defendant understood the elements of the offense of Second-Degree Murder nor was he informed as to what such elements were."[4] Specifically, the defendant argues that he was not told that malice aforethought is an element of murder in the second degree. We need not decide whether *Henderson* v. *Morgan* is to be applied retroactively since we conclude that, even if the standards set forth in *Henderson* are applied to this case, the defendant's plea was not invalid.

In *Henderson*, the defendant, who had formerly been classified as retarded and committed to a State school for mental defectives,[5] was released to become a laborer on the victim's farm. After an argument during which the victim threatened to return the defendant to State custo-

court, and the exceptions are therefore deemed waived. *Commonwealth* v. *Amazeen*, 375 Mass. 73, 74 n.1 (1978). In any event, the defendant was not prejudiced by the exclusion of the documents since in reaching our conclusion we do not rely on the statements of the eyewitness; rather we rest our decision on the defendant's own admissions.

[4] Although not an issue before us, we note that the burden of proof on the issue of the voluntariness of a plea always remains on the Commonwealth. See *Commonwealth* v. *Morrow*, 363 Mass. 601, 604 (1973).

[5] In this case there is no evidence that the defendant possessed unusually low mental capabilities. McGuirk had completed three years of high school, and had no difficulty speaking or understanding English.

dy, the defendant decided to run away. That night the defendant entered the victim's room with a knife to collect his wages. The victim awoke and began screaming; the defendant then stabbed and killed her. At the arraignment on an indictment for murder in the first degree, the indictment, which charged that the defendant had "willfully" stabbed the victim, was read to him. He subsequently pleaded guilty to murder in the second degree. At the plea hearing, the defendant, in direct colloquy with the judge, stated that his plea was based on the advice of his attorneys and that he understood he was accused of killing the victim. However, there was no mention of the mental element of murder in the second degree under the relevant State law, N.Y. Penal Law § 1046 (McKinney 1967), "a design to effect the death of the person killed." Defense counsel, at sentencing, stated that the defendant meant no harm to the victim; rather, the defendant with his uncontrollable temper, had panicked in the excitement and tension of the screaming and had then assaulted the victim. The judge, after an evidentiary hearing on the defendant's argument to withdraw his plea, specifically found that the defendant had not been advised on the requisite mental element at any time by his concededly competent counsel or the judge.

The Supreme Court, reviewing the totality of the circumstances, determined that the defendant's plea was involuntary in a constitutional sense because if the defendant is ignorant of a critical element of an offense, his plea of guilty to that offense cannot serve as an intelligent admission of guilt.

The Court assumed that the defendant would have pleaded guilty even if he had been informed of the intent requirement. It further assumed that there was abundant evidence of the defendant's guilt. Henderson v. Morgan, supra at 644. But the Court noted that, although intent to kill could have been proved by the evidence even if the defendant's actual state of mind were consistent with innocence or manslaughter and even if a design to

effect death almost inevitably would have been inferred from the evidence that the defendant repeatedly stabbed the victim, a jury would not have been required to draw that inference and, if they believed defense counsel's version, could have returned a verdict of manslaughter in the first degree defined under the relevant State Law, N.Y. Penal Law § 1050 (McKinney 1967), to include a killing "[i]n the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." *Henderson* v. *Morgan, supra* at 645 n.16. The defendant's guilt had thus not been established by an admission of guilt because his statement that he had killed the victim did not necessarily admit that he was guilty of murder in the second degree as defined by the relevant State law and the intent element had not otherwise been established by facts stipulated to or admitted in the record. Therefore, the defendant's guilt was not established in any of the three constitutionally permissible ways: a verdict of guilty after trial, and admission of guilt in open court, or a plea of guilty accompanied by a claim of innocence in accordance with the standards of *North Carolina* v. *Alford*, 400 U.S. 25 (1970).

As we read *Henderson,* the plea was involuntary not simply because the record of the guilty plea hearing contained no explanation of the elements of murder in the second degree, but also because there was nothing that could "serve as a substitute for . . . a voluntary admission . . . that [defendant] had the requisite intent. Defense counsel did not purport to stipulate to that fact; they did not explain to him that his plea would be an admission of that fact; and he made no factual statement or admission necessarily implying that he had such intent." *Henderson* v. *Morgan, supra* at 646. The opinion, in our view, thus indicates that the deficiency in the *Henderson* case can be cured in at least one of three ways: (1) an explanation of the essential elements by the judge at the guilty plea hearing; (2) a representation that counsel has explained to the defendant the elements he admits by his

plea;[6] (3) defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts. See Note, Due Process—Guilty Pleas—Constitutional Standards of Voluntariness Were Not Satisfied by a Plea of Guilty Where Defendant was Unaware that Intent to Kill was an Essential Element of the Crime, 5 Am. J. Crim. L. 105, 112-113, 117 (1977).

We turn now to the facts of this case to determine whether the standard of *Henderson* v. *Morgan, supra,* has been satisfied. McGuirk contends he was not informed that malice aforethought is an element of murder in the second degree. We assume malice is a critical element within the meaning of *Henderson* for it is the element which distinguishes murder from manslaughter. *Commonwealth* v. *Hicks,* 356 Mass. 442, 445 (1969). *Commonwealth* v. *York,* 9 Met. 93, 102 (1845). Although the public interest in reducing collateral attacks on guilty pleas may call for an explanation on the record in understandable terms of the elements of the offense to which the defendant pleads,[7] we believe no error was committed in this case in accepting the defendant's guilty plea and denying his motion for a new trial because his admission to a protracted beating of the victim is an admission of the malice element necessary for murder in the second degree.

Murder in the second degree is the unlawful killing of a human being with malice aforethought. *Commonwealth* v. *McCauley,* 355 Mass. 554, 559 (1969). *Common-*

---

[6] Normally it must also be found that the defendant understood the explanation by the judge or counsel. But see *Allard* v. *Helgemoe,* 572 F.2d 1 (1st Cir. 1978), where the defendant, though competent to stand trial and to appreciate the wisdom of counsel's advice to plead guilty, was of insufficient intelligence to comprehend the intent element of the offense to which he pleaded guilty. The question of the ability of the defendant to understand the elements of the offense is not present in this case. See note 5, *supra.*

[7] The type of statements used in jury charges may be helpful in conveying the requisite information. See *United States* v. *Coronado,* 554 F.2d 166, 172 (5th Cir.), cert. denied, 434 U.S. 870 (1977).

wealth v. Leate, 352 Mass. 452, 456 (1967). Common-
wealth v. Bedrosian, 247 Mass. 573, 576 (1924). Malice
aforethought is a term of art which includes any intent
to inflict injury without legal excuse or palliation. Com-
monwealth v. Campbell, 375 Mass. 308, 311-312 (1978).
Commonwealth v. Hicks, supra at 444-445. Common-
wealth v. Leate, supra at 456. Commonwealth v. York,
supra, at 104-105. While a specific intent to kill satisfied
the malice requirement, under Massachusetts law, un-
like under the State law involved in Henderson, actual
intent to kill is not a necessary element of murder in the
second degree. Commonwealth v. Mangum, 357 Mass. 76,
85 (1970). Commonwealth v. Chance, 174 Mass. 245, 252
(1899). An intention to inflict injury on the victim which
is not justified on any lawful ground or palliated by the
existence of any mitigating circumstances is malicious
within the meaning of the law. Commonwealth v. Bedro-
sian, supra at 576.

The defendant does not claim his actions were justified
nor do the circumstances appearing in the record indicate
justification or palliation. While the defendant stated
that the victim came toward him and that he thought the
victim "was going to hit me or something," fear of an
assault would not justify the defendant's response. Com-
monwealth v. Hartford, 346 Mass. 482, 490 (1963). In any
event, a right to self-defense would not accrue until the
defendant had availed himself of all proper means to
avoid combat. Commonwealth v. Hartford, supra at 490.
Commonwealth v. Houston, 332 Mass. 687, 690 (1955). See
Commonwealth v. Shaffer, 367 Mass. 508 (1975). Nor
were circumstances disclosed which would provide a basis
for a finding of a killing from a sudden transport of pas-
sion or heat of blood on a reasonable provocation, which
finding would supply mitigating circumstances and
thereby cleanse the defendant's actions of their malicious
quality in law. Commonwealth v. Hartford, supra at 490-
491. Even if the woman in his apartment had been the
defendant's girl friend, which he denies, jealousy or anger

at finding her with another man would not serve as suffi-
cient provocation to reduce his act to manslaughter. See
*Commonwealth* v. *Bermudez,* 370 Mass. 438 (1976). The
defendant's intoxication also does not relieve his actions
of their malicious quality in law. *Commonwealth* v. *John-
son,* 374 Mass. 453, 462-464 (1978). *Commonwealth* v.
*Sires,* 370 Mass. 541, 548 (1976). *Commonwealth* v. *Rog-
ers,* 351 Mass. 522, 532-533, cert. denied, 389 U.S. 991
(1967). *Commonwealth* v. *Soaris,* 275 Mass. 291, 299-300
(1931).

The defendant maintained at the evidentiary hearing
on his motion for a new trial that he did not intend to
inflict serious bodily injury on the victim and did not
believe death likely as the result of his actions. The judge,
however, was not required to find such statements credi-
ble. The fact that the defendant now denies he had the
requisite intent does not preclude or make erroneous the
judge's finding of fact "that the Defendant understood
the meaning of the indictment and the substance of the
charge against him." Moreover, "an act causing death
may be murder, manslaughter, or misadventure, accord-
ing to the degree of danger attending it. If the danger is
very great . . . it is murder . . . . The very meaning of the
fiction of implied malice in . . . cases at common law was,
that a man might have to answer with his life for conse-
quences which he neither intended nor foresaw. To say
that he was presumed to have intended them, is merely
to adopt another fiction, and to disguise the truth. The
truth was, that his failure or inability to predict them was
immaterial, if, under the circumstances known to him,
the court or jury, as the case might be, thought them
obvious . . . . [I]mplied malice signifies the highest degree
of danger, and makes the act murder . . . ." *Common-
wealth* v. *Pierce,* 138 Mass. 165, 178 (1884). See also *Com-
monwealth* v. *York,* 9 Met. 93, 101-103 (1845).

McGuirk's claims at the hearing on the motion for a
new trial are not the type of equivocation found in *Hen-
derson* v. *Morgan.* There, defense counsel admitted that

the defendant struck or stabbed the victim forty-five times with a knife. However, this admission, which admitted only the act of killing, not the mens rea of the crime charged under the applicable law, was coupled with statements that the defendant had meant no harm but had panicked.[8] In *Henderson* there were no statements by the defendant or his counsel necessarily implying that the defendant acted with the requisite intent. In contrast, McGuirk's admission to a protracted beating was an admission of the element of malice necessary to constitute murder in the second degree. Compare *Commonwealth* v. *Santo*, 375 Mass. 299, 306 (1978), and *Commonwealth* v. *Hicks*, 356 Mass. 442, 445 (1969), with *Commonwealth* v. *Campbell*, 352 Mass. 387, 398-399 (1967).

In summary, McGuirk's admission that he struck the first blow and continued to beat the victim in the absence of any justifying or mitigating circumstances is a sufficient admission of an "intent to inflict injury upon [the victim] without legal excuse or palliation." *Commonwealth* v. *Mangum*, 357 Mass. 76, 85 (1970). See also *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80-81 (1978). Therefore, under the standards enunciated in *Henderson*, as we read the opinion, the defendant's plea was not involuntary.

Although there is some conflict concerning the proper meaning of *Henderson*, a number of other courts have interpreted that decision as we have and have found a defendant's admission to facts implying guilt sufficient to satisfy *Henderson* or a rule of criminal procedure similar to *Henderson* in its import. See *United States* v. *Coronado*, 554 F.2d 166, 173 (5th Cir.), cert. denied, 434 U.S. 870 (1977) (no reversible error where trial judge failed to explain the meaning of conspiracy since defendant admit-

---

[8] Such equivocation not only suggests that the defendant may have misunderstood the elements of the offense but also should alert the trial judge to the advisability of further inquiry to ensure an intelligent plea. *State* v. *Ohnemus*, 254 N.W.2d 524 (Iowa 1977).

ted to facts establishing his guilt); *State* v. *Henry,* 114
Ariz. 494, 497-498 (1977) (defendant's statements admit-
ting to an intent to burglarize were sufficient to uphold
his guilty plea to murder in the first degree based on a
felony-murder theory); *People* v. *Davis,* 76 Mich. App.
187, 189 (1977) (defendant's admission that he stabbed
the victim with a knife was sufficient to uphold his plea
of guilty to murder in the second degree since malice is
"present even where there is no actual intent to kill if the
actual intent is to inflict great bodily harm or to engage
in behavior the natural tendency of which is to cause
death or great bodily harm," and could be inferred from
this admission). See also *State* v. *Devine,* 114 Ariz. 574
(1977).

Since the defendant's plea was not involuntary, the
order denying the motion to withdraw the guilty plea and
for a new trial is affirmed.

*So ordered.*