Salinger, Kenneth W., J.
Twenty years ago Bryce Noonan resolved an indictment for first degree murder by pleading guilty to a reduced charge of second degree murder. Noonan admitted that he participated in repeatedly beating James Margeson, including with rocks and sticks, and that the beating caused severe head injuries that killed Margeson. Noonan was seventeen years old when he committed this crime.
Noonan now moves to vacate his plea, arguing it was not made intelligently and voluntarily because he wrongly believed that if convicted of first degree murder he would be imprisoned for life with no chance of parole, and also because he did not understand the elements of second degree murder. Alternatively, Noonan seeks a new sentence of time served, arguing he is being illegally imprisoned for life with no real possibility of parole. Since Noonan pleaded guilty-before a judge who has since retired, his motion was assigned to another judge. The Court concludes that there is no need for an evidentiary hearing and that Noonan’s motion is without merit.
1. Summary of Decision
Noonan’s guilty plea was valid even though he could not have known that the maximum penalty for a juvenile who commits murder would later be reduced due to new constitutional interpretations by the United States Supreme Court and the Supreme Judicial Court. Noonan says he pleaded guilty to second degree murder to avoid the possibility of being convicted of first degree murder and thus subjected to a mandatory sentence of life in prison without the possibility of parole, that such a sentence would have been unconstitutional because Noonan committed this crime as juvenile, and that Noonan would not have pleaded guilty if he knew that the threatened sentence for first degree murder was unconstitutional. The central premise of this argument is incorrect, however. At the time Noonan pleaded guilty, the mandatory sentence of life in prison without parole could constitutionally have been imposed if Noonan had instead been convicted of first degree murder. It was not until years later that imprisoning a juvenile offender for life with no chance of parole was held to constitute an unconstitutional cruel and unusual punishment. The fact that there has now been a material change in the law does not invalidate Noonan’s plea bargain with the Commonwealth.
Nor does Noonan’s claimed confusion regarding the elements of second degree murder during the plea colloquy make his guilty plea unintelligent or unjust. Noonan voluntarily and intelligently admitted to facts sufficient to establish all the elements of second degree murder. It is therefore immaterial whether those elements were properly explained to Noonan before his guilty plea was accepted.
Noonan’s assertion that his sentence is unconstitutional because he has no meaningful opportunity to obtain parole is also without merit. Although Noonan filed his motion in April 2014, he relies on outdated information to argue that as of June 2013 the Parole Board’s guidelines did not distinguish between juvenile and adult offenders and that the Board had never granted parole to a juvenile offender serving a life sentence. Since then the Board updated its guidelines to take into account the distinctive attributes of youth when considering parole requests by inmates who committed crimes as juveniles. Consistent with its new guidelines, the Board has granted parole, sometimes subject to conditions, to at least seven inmates sentenced to life in prison for a second degree murder committed as juvenile and to an additional inmate sentenced to life in prison for a first degree murder committed as a juvenile. Noonan has not shown that inmates serving life sentences for crimes committed when they were less than 18 years of age have no meaningful opportunity to obtain release from prison.
Finally, the fact that Noonan’s first two bids for parole were denied provides no ground for the Court to release Noonan by resentencing him to time served. The Court may not second-guess the Board’s reasoning in denying Noonan parole. It would violate the constitutional separation of powers for the Court to truncate Noonan’s sentence on the ground that the Board erred in denying him parole.
2. No Evidentiary Hearing
The Court exercises its discretion to decide Noonan’s motion without a hearing because the motion raises no substantial issue that requires further fact finding and Noonan has not shown that an evidentiary hearing would “add anything to the information that has been presented in the motion and affidavits.” Commonwealth v. Goodreau, 442 Mass. 341, 348-49 (2004) (new trial motion); accord Lykus v. Commonwealth, 432 Mass. 160, 163 (2000) (motion for post-conviction correction of sentence); Mass.R.Crim.P. 30(c).
The Court reaches this conclusion after carefully reviewing and considering the transcript of Noonan’s guilty plea colloquy in February 1994, Noonan’s affi *246 davit (concerning his decision to plead guilty and the physical and mental abuse he suffered as a child), the affidavit of Attorney Patricia Garin (concerning the Parole Board’s policies and decisions regarding offenders sentenced to life in prison for crimes committed as a juvenile), Noonan’s other exhibits, and the arguments in Noonan’s sixty-seven-page memorandum of law.
No evidentiary hearing is warranted because Noonan’s motion is without merit even assuming that the facts and opinions submitted in support of his motion are all true and credible. See Commonwealth v. Buckman, 461 Mass. 24, 44 (2011) (affirming denial of evidentiary hearing on this ground); accord Commonwealth v. Ortiz, 67 Mass.App.Ct. 349, 361, rev. denied, 447 Mass. 1112 (2006) (“If the theory of the motion, as presented by the papers, is not credible or not persuasive, holding an evidentiary hearing to have the witnesses repeat the same evidence... will accomplish nothing” (quoting Goodreau, 442 Mass. at 348-49)). For the purpose of deciding this motion, therefore, the Court credits the affidavits and exhibits that Noonan submitted in support of the motion.[1]
3. Motion to Vacate Guilty Plea
“A motion for a new trial pursuant to Mass.R.Crim.P. 30(b) is the proper vehicle by which to seek to vacate a guilty plea.” Commonwealth v. Scott, 467 Mass. 336, 344 (2014). Such a motion “is addressed to the sound discretion of the trial judge[.]” Commonwealth v. Furr, 454 Mass. 101, 106 (2009), quoting Commonwealth v. Russin, 420 Mass. 309, 318 (1995). “A judge may grant the defendant’s motion only ‘if it appears that justice may not have been done.’ ” Id., quoting Mass.R.Crim.P. 30(b).
“Due process requires that ‘a guilty plea should not be accepted, and if accepted must be later set aside,’ unless the contemporaneous record contains an affirmative showing that the defendant’s plea was intelligently and voluntarily made.” Id., quoting Commonwealth v. Foster, 368 Mass. 100, 102 (1975). The Commonwealth has “the burden of showing the voluntary and intelligent nature” of Noonan’s guilty plea. Huot v. Commonwealth, 363 Mass. 91, 99 (1973); accord, e.g., Furr, 454 Mass. at 107. “A guilty plea is intelligent if it is tendered with knowledge of the elements of the charges against the defendant and the procedural protections waived by entry of a guilty plea. A guilty plea is voluntary so long as it is tendered free from coercion, duress, or improper inducements.” Scott, 467 Mass. at 345 (internal citation omitted). Noonan also argues that his guilty plea was not made knowingly. “For guilty plea purposes, ‘knowing’ is synonymous with the ‘intelligent’ requirement.” Commonwealth v. Hunt, 73 Mass.App.Ct. 616, 619 n.5 (2009). “Use of the term ‘knowing’ is but another way of describing the longstanding requirement that a guilty plea be made intelligently, i.e., with understanding of the nature of the charges and the consequences of his plea.” Commonwealth v. Hiskin, 68 Mass.App.Ct. 633, 638 (2007) (internal citations omitted).
a. Risk of Life-Without-Parole Sentence
Although Noonan pleaded guilty to a charge of murder in the second degree to avoid being sentenced to life in prison with no possibility of parole if convicted of first degree murder, and did so without anticipating that the maximum allowable penalty for a juvenile who commits first degree murder would be reduced years later to the same penalty that Noonan accepted for second degree murder, that does not mean that Noonan’s guilty plea was either unintelligent or involuntary. See, e.g., Brady v. United States, 397 U.S. 742, 756-58 (1970) (guilty plea to avoid death penalty valid even though death penalty was later deemed unconstitutional).
Noonan makes no claim that the pressure of facing a more severe punishment for first degree murder, standing alone, means that his plea was involuntary or coerced. Most plea bargains allow an offender to avoid a more severe penalty. That fact does not make an otherwise voluntary guilty plea unlawful. See, e.g., Brady, 397 U.S. at 749-55; Commonwealth v. Berrios, 447 Mass. 701, 709 (2006); Commonwealth v. Leate, 367 Mass. 689, 694 (1975). Instead, Noonan asserts that his plea was involuntary and unintelligent because he mistakenly believed that he was avoiding a real chance of being sentenced to life in prison with no possibility of parole. This claim is without merit.
Noonan’s guilty plea was neither involuntary, unintelligent, nor unjust merely because he — like virtually the entire legal community at the time — had no idea that mandatory sentences of life in prison with no chance of parole would, years later, become unenforceable against offenders who committed murder as a juvenile. “A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended .. . the likely penalties attached to alternative courses of action.” Brady, 397 U.S. at 757. To the contrary, “the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea.” United States v. Sahlin, 399 F.3d 27, 31 (1st Cir. 2005) (guilty plea to avoid mandatory penalty under federal Sentencing Guidelines valid even though mandatory aspect of guidelines was later deemed unconstitutional).
In 2012 the Supreme Court held for the first time that the prohibition on “cruel and unusual punishments” in the Eighth Amendment to the United States Constitution bars the mandatory imposition of a sentence of life in prison without the possibility of parole on offenders who commit murder when they are less than eighteen years old. See Miller v. Alabama, 132 S.Ct. 2455, 2460 (2012). In 2013 the Supreme Judicial Court held that the new rule announced in Miller applies retroactively, and also for the first time construed art. 26 of the Massachusetts Declaration of *247 Rights to bar the discretionary as well as the mandatory imposition of such a sentence on juvenile offenders who commit first degree murder. Diatchenko v. District Attorney for the Suffolk District, 466 Mass. 655, 661-71 (2013) [Diatchenko II). The SJC therefore invalidated the statutory exception to parole eligibility as applied to offenders who commit or previously committed first degree murder when they were juveniles. Id. at 673-74. As a result, if Noonan had been found guilty in 1994 of first degree murder, under Diatchenko II his sentence would have been changed in 2013 to life in prison with a possibility of seeking parole after serving at least fifteen years in prison, which is the same sentence that Noonan accepted by pleading guilty to second degree murder.
When Noonan pleaded guilty, he correctly understood that if he had been convicted of first degree murder it would have been constitutionally permissible to impose the mandatory sentence of life imprisonment without the possibility of parole. “It was not until Millerwas decided that the sentencing of juvenile homicide offenders fundamentally changed in a way that had not been dictated by then-existing precedent.” Diatchenko II, 466 Mass. at 664. “Miller broke new ground and did not merely apply an established constitutional standard to a novel set of facts.” Id. at 663. Before Miller was decided in 2012, “there was no suggestion in existing Federal or State law that the imposition of a mandatory sentence of life in prison without the possibility of parole on an offender who was under the age of eighteen at the time he committed murder was constitutionally suspect.” Id. at 664. To the contrary, the SJC had previously held that an offender who commits murder in the first degree as a juvenile could be sentenced to life imprisonment with no chance of probation without violating the Eighth Amendment or art. 26. See Commonwealth v. Diatchenko, 387 Mass. 718, 721-27 (1982) (Diatchenko 1). Thus, Miller and Diatchenko II announced new constitutional rules that made substantive changes in prior understandings of what constitutes unconstitutionally cruel and unusual punishment with respect to crimes committed by juvenile offenders. See Diatchenko II, 466 Mass. at 662-66.
The fact that Noonan entered into a plea bargain to avoid a penally that was later held to be unconstitutional does not mean that Noonan’s guilty plea was unintelligent or involuntary. “[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because . . . later pronouncements of the courts, as in this case, hold that the maximum penally for the crime in question was less than was reasonably assumed at the time the plea was entered.” Brady, 397 U.S. at 757.
The Supreme Court has held that a guiliy plea entered as part of a bargain to avoid the death penally is valid and binding even if later decisions hold that it would have been unconstitutional to impose the death penally under those circumstances. Id. at 756-58. There is “no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions,” and the defendant “did not anticipate” those later rulings at the time he changed his plea to guilty. Id. at 757.
Similarly, the United States Courts of Appeal have uniformly held that guilty pleas entered to avoid the risk of a longer prison sentence that would have been mandatory under federal Sentencing Guidelines remain valid even though the Supreme Court later held “that the provision of the federal sentencing statute that makes the Guidelines mandatoiy” is unconstitutional, that this provision “must be severed and excised,” and that going forward the Guidelines are “effectively advisory.” See United States v. Booker, 543 U.S. 220, 245 (2005). Guilty pleas entered in federal court after the mandatoiy Guidelines took effect and before Booker made them advisory were neither unintelligent nor involuntary merely because the offenders did not anticipate that the Supreme Court would invalidate the mandatoiy aspect of the guidelines. See Sahlin, 399 F.3d at 28-31 (1st Cir.); United States v. Roque, 421 F.3d 118, 120-24 (2d Cir. 2005), cert. denied, sub nom Delahoz v. United States, 546 U.S. 1120 (2006); United States v. Lockett, 406 F.3d 207, 212-14 (3d Cir. 2005); United States v. Johnson, 410 F.3d 137, 151-53 (4th Cir.), cert. denied, 546 U.S. 952 (2005); United States v. Guinyard, 149 Fed.Appx. 279, 281 (5th Cir. 2005) (unpublished); United States v. Bradley, 400 F.3d 459, 462-66 (6th Cir.), cert. denied, 546 U.S. 862 (2005); United States v. Bownes, 405 F.3d 634, 636-37 (7th Cir.), cert. denied, 546 U.S. 926 (2005); United States v. Reeves, 410 F.3d 1031, 1035 (8th Cir. 2005), cert. denied, sub nom Reeves v. United States, 546 U.S. 1226 (2006); United States v. Pacheco Navarette, 432 F.3d 967, 969-70 (9th Cir. 2005), cert. denied, 549 U.S. 892 (2006); United States v. Green, 405 F.3d 1180, 1190-91 (10th Cir. 2005); United States v. Narcisse, 140 Fed.Appx. 893, 895 (11th Cir. 2005) (unpublished).
The constitutional principle articulated in Brady and applied in these other federal cases also applies here. Noonan is bound by the guiliy plea he entered to avoid the possibility of life in prison with no chance of parole, even though it is now unconstitutional to impose such a penalty on an offender who committed first degree murder as a juvenile.
b. Elements of Second Degree Murder
Noonan correctly notes that nothing in his plea colloquy suggests that the judge or Noonan’s lawyer ever explained the elements of second degree murder to Noonan. Although Noonan understood that second *248 degree murder involved the unlawful killing of another person, there is no evidence that he also understood that the Commonwealth would have to prove that he had acted with the requisite malice aforethought. When the judge asked the prosecutor to explain the elements of second degree murder, the assistant district attorney responded inaccurately, stating that “it would include all the elements of first degree murder minus the element of malice.” The judge then clarified that second degree murder differed from first degree murder in that the Commonwealth did not have to prove deliberate premeditation or extreme atrocity or cruelty. Cf. Commonwealth v. Earle, 458 Mass. 341, 346 n.7 (2010). But neither the judge nor either counsel ever told Noonan affirmatively that the Commonwealth would have to prove a lesser degree of malice to prove to demonstrate that Noonan was guilty of committing second degree murder.
The failure to explain the malice element of second degree murder does not mean that Noonan’s guilty plea was invalid, however. Noonan’s “admission to a protracted beating of the victim is an admission of the malice element necessary for murder in the second degree.” Commonwealth v. McGuirk, 376 Mass. 338, 344 (1978), cert. denied, 439 U.S. 1120 (1979).
A defendant can intelligently plead guilty even if he does not know the elements of the crime, so long as the defendant admits to facts that establish all of the elements of the crime. See, e.g., Furr, 454 Mass. at 107-08; McGuirk, 376 Mass, at 343-44. ‘The requirement that the defendant’s plea be made intelligently may be met ‘(1) by the judge explaining to the defendant the elements of the crime; (2) by counsel’s representation that [he] has explained to the defendant the elements he admits by his plea; or (3) by the defendant’s stated admission to facts recited during the colloquy which constitute the unexplained elements.’ ” Furr, 454 Mass. at 107, quoting Commonwealth v. Correa, 43 Mass.App.Ct. 714, 717 (1997). “A showing that the defendant admitted the facts constituting the crime” is therefore sufficient, “even if he is not aware that the facts he admitted are the elements of the crime.” Furr, at 108, quoting Commonwealth v. Colantoni, 396 Mass. 672, 680 (1986).
In pleading guilty, Noonan admitted that the following facts were true and accurate. On Saturday, June 2, 1992, there was an altercation in some woods in Woburn between James Margeson, a thirty-five-year-old man who had problems with alcohol, and a group of high school students. Margeson often went into those woods to drink beer or other alcoholic beverages. Noonan was not involved in that initial altercation. He and Ian Worthen were high school classmates of the students who were involved in it. When Noonan and Worthen learned what had happened, they decided to go after Margeson but could not ftnd him because he had left the area. The following Tuesday afternoon, a third classmate brought Noonan and Worthen into the woods to a place where Margeson frequently sat and drank. While waiting to see whether Margeson would show up that day, Worthen said to Noonan “We should kill this guy. He’s a bum and nobody would ever miss him.” Margeson soon appeared, and spoke with the three high school classmates. Although the three students soon left the woods, Worthen and Noonan circled back with the intent of finding and beating up Marge-son.
Noonan admitted that he and Worthen engaged in a joint venture to attack Margeson, repeatedly and severely beat Margeson without provocation, and inflicted injuries that killed Margeson. Specifically, he admitted that the following additional facts were true. Noonan and Worthen found Margeson in the woods that afternoon and beat him badly. Noonan kicked Margeson and Worthen hit him with a rock. They then walked away, but soon returned to check on Marge-son. They found Margeson lying on the ground and convulsing. Noonan and Worthen then attacked Margeson a second time, hitting him repeatedly with rocks and sticks. When they stopped the second attack Margeson was not moving and Noonan thought he was dead. The injuries that Noonan and Worthen inflicted upon Margeson included two skull fractures, seven head lacerations, four broken fingers, and other injuries to his arms and hands. Margeson was found dead the next morning. He died from the severe head trauma caused by Noonan and Worthen.
“The elements of murder in the second degree are (1) an unlawful killing and (2) malice.” Earle, 458 Mass, at 346. The malice element of second degree murder can be established through proof that either: “(1) the defendant intended to cause the victim’s death; (2) the defendant intended to cause grievous bodily harm to the victim; or (3) the defendant committed an intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death.” Id.
The facts admitted by Noonan establish the second and third prongs of malice for second degree murder. Noonan admitted that he participated in searching for Margeson and in kicking and beating Margeson without provocation, and that he returned to attack Marge-son a second time and continued participating in beating him with rocks and sticks until Margeson stopped moving and appeared to be dead. These facts are sufficient to establish that Noonan acted with the requisite malice. See McGuirk, 376 Mass, at 340-47 (defendant’s admission that he attacked victim, gave him a protracted beating, and that victim died as a result established elements of second degree murder); see also Commonwealth v. Begin, 394 Mass. 192, 197-98 (1985) (in evaluating sufficiency plea of guilty to second degree murder, “[t]he necessary element of malice can be inferred from the use of a deadly weapon”); Commonwealth v. Springer, 49 Mass.App.Ct. *249 469, 480, rev. denied, 432 Mass. 1106 (2000) (malice element of second degree murder established by evidence that defendant dropped large rock on victim’s head). “The defendant does not claim his actions were justified nor do the circumstances appearing in the record indicate justification or palliation.” McGuirk, 376 Mass, at 345. Thus, the admitted facts establish that Noonan’s conduct was “malicious within the meaning of the law.” Id.
The plea colloquy as a whole establishes that Noonan pleaded guilty voluntarily and intelligently. Noonan’s plea was voluntaty because it was “free from coercion, duress, or improper inducements.” Scott, 467 Mass, at 345. Noonan’s plea was intelligent because he understood the facts that he was admitting and the consequences of pleading guilty, including that he would be sentenced to life in prison with the opportunity to seek parole after fifteen years. The judge also made clear that there is no guarantee that Noonan would be paroled, even though he was eligible to seek parole, and Noonan stated that he understood. Noonan’s argument that he was too young to understand what he was doing when he pleaded guilty is without merit. Noonan was nineteen years old at the time of his guilty plea. It is evident from the plea colloquy that Noonan had the maturity and mental capacity to understand what he was doing, the risks that he was avoiding, and what he was giving up by pleading guilty to second degree murder.
In sum, justice was done when Judge Roseman accepted Noonan’s guilty plea and sentenced him to life in prison for committing second degree murder.
3. Motion for a New Sentence of Time Served
Noonan also moves for a new sentence pursuant to Mass.R.Crim.P. 30(a) on the ground that he is unconstitutionally being held in prison for life with no real possibility of parole for a crime he committed as a juvenile. “A rule 30(a) motion is the proper mechanism by which to challenge the constitutionality of a criminal sentence. Commonwealth v. Parrillo, 468 Mass. 318, 320 (2014).
a. Meaningful Opportunity for Parole
Noonan argues that the Parole Board’s policies and practices demonstrate that Noonan has no realistic possibility of being released on parole. He relies on an affidavit by Attorney Garin showing that as of June 2013 the Board’s written criteria did not distinguish between juvenile and adult offenders, and the Board had not granted any parole request by offenders sentenced to life in prison for crimes they committed as a juvenile.
The fact that no juvenile homicide offender had been granted parole as of June 2013 would not establish that Noonan has no meaningful opportunity to be paroled, even if one were to ignore more current information to the contrary. “ ‘A State is not required to guarantee eventual freedom,’ but must provide ‘some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.’ ” Miller, 132 S.Ct. at 2469, quoting Graham v. Florida, 560 U.S. 48, 75 (2010). The chance for parole under Massachusetts law satisfies this constitutional requirement. As the Supreme Judicial Court has explained:
At the appropriate time, it is the purview of the Massachusetts parole board to evaluate the circumstances surrounding the commission of the crime, including the age of the offender, together with all relevant information pertaining to the offender’s character and actions during the intervening years since conviction. By this process, a juvenile homicide offender will be afforded a meaningful opportunity to be considered for parole suitability.
DiatchenkoII, 466 Mass, at 674 (emphasis added). The fact that other juvenile homicide offenders had not won parole does not demonstrate that Noonan has no real chance of ever being paroled. “[individuals who are under the age of eighteen when they commit murder” have no right to be paroled, and should have no expectation that they necessarily will be paroled regardless of their personal circumstances, “once they have served a statutorily designated portion of their sentences.” Id.
In any case, the Parole Board no longer has a policy of treating juvenile homicide offenders the same as offenders who committed murder as an adult. In fact the Board has begun granting parole to offenders who committed murder when they were younger than eighteen years of age. Noonan’s argument to the contrary is based on evidence that was no longer accurate when Noonan filed his motion. More recent Board decisions demonstrate that juvenile homicide offenders have a real chance of obtaining parole.
The Board has updated its written guidelines for evaluating parole requests by offenders serving a life sentence to reflect the holding in Diatchenko II regarding juvenile homicide offenders. Noonan relies on the version of the Board’s “Guidelines for Life Sentences Decisions” that was in effect in June 2013, arguing that those Guidelines did “not distinguish between the juvenile and adult offender.” But that is no longer true. The Board has since revised the Guidelines to provide that “an inmate who committed the offense as a juvenile will be evaluated with recognition of the distinctive attributes of youth, including immaturily, impetuosity, and a failure to appreciate risks and consequences.”[2]
Furthermore, since June 2013 the Board has granted parole, sometimes subject to the completion of specific antecedent conditions, to at least eight offenders serving life sentences for committing murder as a juvenile.[3] During 2013, the Board paroled 53 percent (eight out of fifteen) of offenders serving life sentences who were juveniles when they committed their crimes, but only paroled 21 percent (19 out of *250 91) of life sentence offenders who were adults when they committed their crimes.[4] At least six of the eight juvenile life sentence offenders paroled during 2013 had committed second degree murder.[5] In 2014 the Board paroled at least one more offender serving a life sentence for a second degree murder committed as a juvenile,[6] and for the first time granted parole to an offender serving a life sentence after being convicted of two counts of first degree murder committed as a juvenile.[7]
In sum, Noonan’s argument that juvenile homicide offenders have no real chance of being paroled ignores and cannot be squared with more recent information regarding the Parole Board’s policies and practices.
b. Denial of Noonan’s Parole Requests
Finally, the Court may not reduce Noonan’s sentence to time served on the ground that the Parole Board acted unfairly in denying Noonan’s first two applications for parole. Doing so would violate the constitutional separation of powers reflected in art. 30 of the Massachusetts Declaration of Rights. “The granting of parole, or conditional release from confinement, is a discretionary act of the parole board. It is a function of the executive branch of government with which, if otherwise constitutionally exercised, the judiciary may not interfere.” Commonwealth v. Cole, 468 Mass. 294, 302 (2014). For example, a trial judge may not revise or revoke a criminal sentence “when the parole board does not act in accordance with a judge’s expectations.” Commonwealth v. Amirault, 415 Mass. 112, 116 (1993). A judge “cannot nullify the discretionary actions of the parole board.” Id. at 117. Thus, whether the Parole Board was wise or misguided in denying Noonan’s parole applications can have no bearing on whether his sentence of life in prison is constitutional.
ORDER
Defendant’s motion to withdraw his guilty plea, or in the alternative for a new sentence of time served, is DENIED.

Of course, a judge may decide a motion to withdraw a guilty plea under Mass.R.Ciim.P. 30(b) “based solely on the submitted affidavits,” and choose to believe or disbelieve undisputed affidavits without first conducting an evidentiary hearing. Commonwealth v. Furr, 454 Mass. 101, 106 (2009). The same is true with respect to a post-conviction motion to correct a sentence under Rule 30(a). See Commonwealth v. Matthews, 406 Mass. 380, 396 (1990).

The Court takes judicial notice of the Parole Board’s current Guidelines for Life Sentence Decisions, available at http: / / www.mass.gov/eopss/agencies/parole-board/guide ünes-for-life-sentence-decisions.html (last visited July 21, 2014). See Commonwealth v. Greco, 76 Mass.App.Ct. 296, 301 n.9, rev. denied, 457 Mass. 1106 and 458 Mass. 1105 (2010) (court may take judicial notice of facts “capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned” (quoting Mass. Guide Evid. §201(b)(2)); Cohen v. Assessors of Boston, 344 Mass. 268, 269 (1962) (taking notice of Appellate Tax Board rules) Katz v. Katz, 55 Mass.App.Ct. 472, 479 n.9 (2002) (taking notice of poverty guidelines issued by federal Secretary of Health & Human Services).

Decisions by the Parole Board regarding whether to grant a request for parole are public records. See G.L.c. 127, §130. The Board posts its decisions regarding offenders serving life sentences, including offenders serving a life sentence for committing a murder as a juvenile, on its web site. See http://www.mass.gov/eopss/agencies/parole-board/liferrecords-of-decision.html and http://www.mass.gov/eopss/agencies/parole-board/juven iles-with-ltfe-sentences.html. The Court takes judicial notice of the parole decisions discussed below. See Tilcon-Warren Quarries, Inc. v. Commissioner of Revenue, 392 Mass. 670, 671 n.4 (1984) (court may take judicial notice of public records maintained by state officials).

The Court takes judicial notice of the Parole Board’s one-page report titled “Recent Life Sentence Hearings for Juveniles and Adults,” available at http://www.mass.gov/eopss/agencies/parole-board/juven iles-with-ltfe-sentences.html (last visited July 21, 2014).

See Decision in the Matter of Daniel Mendoza Massachusetts Parole Board no. W62695 (August 12, 2013), Decision in the Matter of Saddiq Palmer, Massachusetts Parole Board no. W62664 (August 12, 2014), Decision in the Matter of Michael Diaz, Massachusetts Parole Board no. W66797 (December 3, 2013), Decision in the Matter of Jason Clements, Massachusetts Parole Board no. W64045 (December 10, 2013), Decision in the Matter ofThappiPhomphakdy, Massachusetts Parole Board no. W629124 (December 11, 2013), Decision in the Matter of David Jones, Massachusetts Parole Board no. W50884 (December 13, 2013), which are publicly available on the Parole Board’s website (last visited July 9, 2014).

See Decision in the Matter of Michael Morrisette, Massachusetts Parole Board no. W49880 (January 23,2014), which is publicly available on the Parole Board’s website (last visited July 9, 2014).

See Decision in the Matter of Frederick Christian, Massachusetts Parole Board no. W64758 (June 5, 2014), which is publicly available on the Parole Board’s website (last visited July 9, 2014).